Paul D. Clement (DC Bar 433215)
pclement@bancroftpllc.com
H. Christopher Bartolomucci (DC Bar 453423)
cbartolomucci@bancroftpllc.com
Conor B. Dugan (DC Bar 1006458)
cdugan@bancroftpllc.com
Nicholas J. Nelson (DC Bar 1001696)
nnelson@bancroftpllc.com

BANCROFT PLLC
1919 M Street, N.W.
Suite 470
Washington, D.C.  20036
202-234-0090 (telephone)
202-234-2806 (facsimile)

*Of Counsel:*
Kerry W. Kircher, General Counsel (DC Bar 386816)
Kerry.Kircher@mail.house.gov
William Pittard, Deputy General Counsel (DC Bar 482949)
William.Pittard@mail.house.gov
Christine Davenport, Senior Assistant Counsel (NJ Bar 043682000)
Christine.Davenport@mail.house.gov
Todd B. Tatelman, Assistant Counsel (VA Bar 66008)
Todd.Tatelman@mail.house.gov
Mary Beth Walker, Assistant Counsel (DC Bar 501033)
MaryBeth.Walker@mail.house.gov

OFFICE OF GENERAL COUNSEL,
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C.  20515
202-225-9700 (telephone)
202-226-1360 (facsimile)

*Counsel for Intervenor-Defendant the Bipartisan Legal Advisory Group of the U.S. House of Representatives*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**Western Division**

| | |
|---|---|
| TRACEY COOPER-HARRIS and MAGGIE COOPER-HARRIS,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>Defendants,<br><br>BIPARTISAN LEGAL ADVISORY GROUP OF THE U.S. HOUSE OF REPRESENTATIVES,<br><br>Intervenor-Defendant. | No. 2:12-cv-00887-CBM (AJWx)<br><br>**REPLY IN SUPPORT OF MOTION OF INTERVENOR - DEFENDANT TO STAY PROCEEDINGS**<br><br>Hearing:    July 23, 2012<br>Time:       11:00 am<br>Hon. Consuelo B. Marshall |

On May 29, 2012, Intervenor-Defendant the Bipartisan Legal Advisory Group of the U.S. House of Representatives ("House") moved for entry of an order staying all proceedings in this case pending the ruling of the Ninth Circuit in *Golinksi v. OPM*, Nos. 12-15388 & 12-15079. *See* Mot. to Stay Proceedings (May 29, 2012) (ECF No. 31). The House now replies to Plaintiffs' Memorandum of Law in Opposition to . . . Motion to Stay (June 18, 2012) (ECF No. 42) ("Pls.' Opp'n").

There is no room for serious dispute that the Ninth Circuit's decision in *Golinski*, will heavily impact, and likely will control, the outcome in this case. Moreover, rushing this case to judgment ahead of *Golinski* will not ameliorate any injury Plaintiffs claim to be suffering from lack of funds because any monetary benefits award – as distinct from possible declaratory relief – cannot come from

this Court; it would have to come from the Department of Veterans Affairs ("VA"). Thus, for the same reasons this Court granted a stay in *Hospital of Barstow, Inc. v. Sebelius*, No. 11-cv-10638, 2012 WL 893784, at *2-3 (C.D. Cal. Mar. 13, 2012), it should do so here.

## ARGUMENT

### I.   Judicial Economy Clearly Counsels In Favor of a Stay.

The similarities between *Golinski* and this case, and the unquestionable impact of *Golinski* on this case, are too obvious to dispute: both involve equal protection challenges to Section 3 of the Defense of Marriage Act ("DOMA") which defines marriage, for purposes of federal law, as "a legal union between one man and one woman as husband and wife." 1 U.S.C. § 7.

Plaintiffs argue that judicial economy will not be promoted by a stay because (i) this case involves, in addition to a challenge to DOMA Section 3, a challenge to DOMA-like definitional provisions in Title 38, and (ii) *Golinski* does not concern Title 38. *See* Pls.' Opp'n at 15-17. This argument – because it blithely assumes that there is only one possible outcome in *Golinski*, namely, that the Ninth Circuit will affirm the district court and hold DOMA Section 3 unconstitutional, *id.* at 17 – is wrong.

DOMA Section 3 and Title 38 each *independently* bar Plaintiffs' entitlement to certain veterans' benefits. Plaintiffs *cannot* prevail in this case unless both statutes are deemed unconstitutional. Put another way, Plaintiffs *cannot* prevail in this case if DOMA is constitutional. Accordingly, if the Ninth Circuit reverses in *Golinski* and finds DOMA Section 3 constitutional – and plainly that is one possible outcome of *Golinski*, *see* Br. of [House] at 20-57, *Golinski v. OPM*, Nos. 12-15388 & 12-15409 (9th Cir. June 4, 2012) (ECF No. 36) – that ruling would be wholly dispositive here, and this Court would have no need or reason to consider the constitutionality of the Title 38 provisions that Plaintiffs challenge.

If the Ninth Circuit were to conclude in *Golinski* – as the Plaintiffs assume that it will – that DOMA Section 3 is unconstitutional, that ruling presumably would be dispositive of Plaintiffs' Section 3 challenge in this case. And while that ruling would not necessarily be dispositive of Plaintiffs' Title 38 challenge, the Ninth Circuit's equal protection reasoning necessarily will impact this case because the standard of review articulated in *Golinski* will dictate how the parties brief and how this Court disposes of Plaintiffs' Title 38 claim. Regardless of whether the Ninth Circuit applies a traditional "rational basis" analysis; an "intensified" form of rational basis review, as the First Circuit recently did in *Massachusetts v. U.S. Department of Health and Human Services*, Nos. 10-2204, 10-2207 & 10-2214, 2012 WL 1948017, – F.3d – (1st Cir. May 31, 2012) (ECF No. 5645268); or some sort of "heightened scrutiny" as advocated by the Department of Justice, the Ninth Circuit's reasoning in *Golinski* necessarily will affect how the parties frame their Title 38 arguments in this case.

Proceeding with this case in light of the expedited *Golinski* appeal invites waste: of the Court's time and resources, and of the parties' time and resources. Every aspect of this case – from a motion to dismiss by the House, to discovery (if dismissal were denied), to motions for summary judgment – stands to be impacted by the Ninth Circuit's decision in *Golinski*, and every aspect might well be rendered instantly obsolete and have to be redone in light of such a decision. Not only would this waste the Court's and the parties' time and resources, it is unlikely to result in the speedy judgment that Plaintiffs want.[1]

Additionally, after the House filed its Motion to Stay in this case, the U.S.

---

[1] Plaintiffs dismiss out of hand the injury that would result from the almost-certain duplicative briefing that will occur if a stay is denied here. *See* Pls.' Opp'n at 13-14. In the constitutionally anomalous situation that is present here, with two branches of the federal government on opposite sides of the constitutional divide, the cost to the federal taxpayer of both branches briefing issues that necessarily will be impacted by the *Golinski* decision cannot so easily be discounted.

Court of Appeals for the First Circuit ruled in another case that DOMA Section 3 violates the equal protection component of the Fifth Amendment's Due Process Clause. *See Massachusetts*, 2012 WL 1948017, slip. op. at 28. The House intends to file with the Supreme Court a petition for certiorari in the *Massachusetts* case by the end of this week. As the First Circuit recognized: "Supreme Court review of DOMA is highly likely." *Id.* at 32.[2] If the Supreme Court grants review of the First Circuit's decision, the case likely will be docketed for briefing, argument, and decision during the October 2012 term.

When the First Circuit issued its opinion in *Massachusetts* on May 31, 2012 – and simultaneously stayed its mandate pending the likelihood of Supreme Court review in that case, *see* Judgment, *Massachusetts v. U.S. Dep't of Health & Human Servs.*, Nos. 10-2204, 10-2207, & 10-2214 (1st Cir. May 31, 2012) (ECF No. 5645272) – the U.S. District Court for the District of Massachusetts, in a case very similar to this one which challenges both DOMA Section 3 and the Title 38 provisions, stayed that case until 30 days after First Circuit issues its mandate in *Massachusetts*. *See* Electronic Order, *McLaughlin v. Panetta*, No. 1:11-cv-11905 (June 6, 2012 D. Mass.) (attached as Exhibit A).[3] This Court should do the same here.

---

[2] The Supreme Court itself has identified a lower court's invalidation of an Act of Congress as a justification for granting certiorari. *See, e.g.*, *United States v. Morrison*, 529 U.S. 598, 605, 120 S. Ct. 1740, 146 L. Ed. 2d 658 (2000) ("Because the Court of Appeals invalidated a federal statute on constitutional grounds, we granted certiorari."); *see also* Eugene Gressman, et al., *Supreme Court Practice* 264 (9th ed. 2007) ("Where the decision below holds a federal statute unconstitutional . . . , certiorari is usually granted because of the obvious importance of the case.").

[3] Plaintiffs inexplicably cite to an earlier joint 60-day stay in the *McLaughlin* case which they characterize as "stipulated." Pls.' Opp'n at 21, n.5 (citing Joint Mot. to Stay, *McLaughlin* (Feb. 14, 2012) (ECF. No. 27)). However, not only was the *McLaughlin* Court's June 6 Stay Order on the docket when Plaintiffs filed their Opposition (a fact Plaintiffs neglected to mention), the June 6 stay order was entered over the objections of the plaintiffs in that case. *See* Exhibit A, Electronic Order, *McLaughlin v. Panetta*, No. 1:11-cv-11905 (D. Mass. June 6, 2012); Pls.' Resp.
(*Continued . . .*)

Both because *Golinski* is pending before the Ninth Circuit, and because the Supreme Court may well review DOMA Section 3's constitutionality in the upcoming term, the House's requested stay unquestionably will promote judicial economy. For this reason alone, the Court should follow its recent decision in *Hospital of Barstow*, 2012 WL 893784, at *2-3 (granting HHS Secretary's motion for stay where issues in case were before Ninth Circuit in another case; holding on ground that stay would promote judicial economy), and grant the House's motion.[4]

## II. This Court Cannot Award Plaintiffs Benefits, Regardless of Whether a Stay Is Entered.

In opposing the House's stay motion, Plaintiffs rely principally on the argument that they will suffer injury if a stay is entered because (i) they will be forced to forego additional disability compensation of approximately $125 per month during the pendency of the stay, and (ii) they will be unable to recover these benefits retroactively in the future. Pls.' Opp'n at 20. Plaintiffs are wrong on both counts.

### A. Only the Secretary Can Award the Benefits that Plaintiffs Seek.

Plaintiffs do not seek an award of benefits in this case, and with good reason. The Veterans' Judicial Review Act, Pub. L. No. 100-687, div. A., 102 Stat. 4105 (1988) ("VJRA"), codified at various sections in Title 38, confers exclusive jurisdiction on the Secretary of Veterans Affairs ("Secretary") to "decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the

---

to Gov'n't Mot. to Stay, No. 1:11-cv-11905 (D. Mass. June 6, 2012) (ECF No. 41) (plaintiffs' opposition to stay motion).

[4] Plaintiffs' argument that *Hospital of Barstow* is distinguishable from this case because it involved a claim for accrued benefits, Pls.' Opp'n at 12, is incorrect for the reasons discussed in section II.B. *See infra* p.7.

dependents or survivors of veterans." 38 U.S.C. § 511;[5] *see also Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1025 (9th Cir. May 7, 2012) (en banc) ("§ 511 precludes jurisdiction over a claim if it requires the district court to review VA decisions that relate to benefits decisions, including any decision made by the Secretary in the course of making benefits determinations.") (internal quotations and citations omitted). Because the VJRA confers exclusive jurisdiction on the Secretary over benefits claims, this Court has no jurisdiction to order an award of benefits by the VA to Tracey nor to order that the VA be bound by its determination of Plaintiffs' constitutional claims. *See* 38 U.S.C. § 511 (explicitly prohibiting review by way of writ of mandamus); *Beamon v. Brown*, 125 F.3d 965, 971 (6th Cir. 1997) ("[T]he VJRA explicitly granted comprehensive and exclusive jurisdiction to the CVA and the Federal Circuit over claims seeking review of VA decisions that relate to benefits decisions under § 511(a). This jurisdiction includes constitutional issues . . . ."). In other words, regardless of the outcome of this case, Tracey must seek a determination of her right to receive additional dependent benefits through the administrative review process of the VA. Indeed, Plaintiffs admit this procedural reality. *See* Pls.' Opp'n at 20 (noting that "Tracey is treated *by the VA* as a single veteran" until her marriage to Maggie is recognized).

The injunctive relief that Plaintiffs seek here in the form of an order that their "marriage . . . be recognized by the federal government," which they suggest will have the effect of conferring benefits, *id.*, plainly is barred by the VJRA. *See*

---

[5] 38 U.S.C. § 511 states, in pertinent part:

(a) The Secretary shall decide *all* questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans.

Subject to subsection (b), the decision of the Secretary as to any such question shall be *final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise* . . .

(emphases added).

38 U.S.C. § 511. Thus, the very most that Plaintiffs can obtain in this case is declaratory relief which will not result in an award of additional benefits, the absence of which is the basis of Plaintiffs' injury claim.

### B. Any Eventual Award of Compensation Will Date Back to the Filing Date of VA Form 21-686c.

Plaintiffs obviously are aware that benefits only can be awarded by the VA. Indeed, they candidly acknowledge that Tracey already has a concurrent administrative claim on file. *See* Pls.' Opp'n at 8 n.2.

The VA's regulations provide that an award of disability compensation dates from the date of receipt of the claim. *See* 38 C.F.R. § 3.400 ("Except as otherwise provided, the effective date of an evaluation and award of . . . compensation . . . based on . . . a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is the later.").[6] Accordingly, if the VA ultimately awards Tracey dependent benefit compensation based on her marriage to Maggie, Tracey will be entitled to those benefits from the filing date of VA Form 21-686c. *See* 38 C.F.R. § 3.400.

In short, Plaintiffs' insistence that they necessarily will lose benefits during the pendency of a stay, *see* Pls.' Opp'n at 20, plainly is false. Rather, if Tracey ultimately is awarded these benefits through the VA administrative process, the benefits will be awarded from April 19, 2011 onward. *See* Compl. at ¶ 40; *see also* 38 C.F.R. § 3.400.

### C. Plaintiffs' Election of this Forum Over the VA Administrative Process Belies Their Claim of Injury.

Because the VA has exclusive jurisdiction to award benefits, Plaintiffs' road

---

[6] In fact, an exception would have applied here to allow Tracey to claim benefits from an even earlier date – the date of her marriage – had she filed her claim within a year of her marriage. *See* 38 C.F.R. § 3.401(b)(1)(i). Instead she waited until two and a half years after her marriage to file VA Form 21-686c claiming Maggie as her spouse. Compl. ¶¶ 37, 40.

to any potential benefits award necessarily runs through that venue. But the marked lack of dispatch with which Plaintiffs have prosecuted their VA claim belies their professed urgent need for the benefits they claim they will lose during the pendency of a stay. Tracey filed VA Form 21-686c on April 19, 2011. Compl. at ¶ 40. Plaintiffs delayed for six months after they received their second VA Regional Office letter on August 8, 2011, to file their Complaint in this case. Compl. at ¶ 43. They also waited seven months to appeal that same decision to the Board of Veterans Appeals. *See id.*; Pls.' Opp'n at 8 n.2 ("On March 19, 2012, Tracey filed VA Form 9, appealing the VA Regional Office's denial of her claim to the Board of Veterans' Appeals . . . ."). Finally, Tracey apparently sought a stay of her VA claim pending resolution of this case, *id.*, which has resulted in further delay.

In other words, Plaintiffs, for reasons best known to themselves, made a series of decisions that resulted in their benefits adjudication being delayed before the VA. Their protracted procedural maneuverings included a decision to "not seek[] damages here," Pls.' Opp'n at 20, in an apparent effort to preserve this Court's jurisdiction. After this lengthy, ongoing, and entirely self-inflicted delay, Plaintiffs are hardly in a position to complain that they will be injured if this Court chooses to await the Ninth Circuit's judgment on DOMA Section 3's constitutionality before proceeding on Plaintiffs' challenge to that very same statute.[7]

---

[7] Plaintiffs speculate that a request for rehearing or en banc review in *Golinski* is "highly likely," but point to no evidence to support that speculation. *See* Pls.' Opp'n at 18. Given that Plaintiffs presume that the Ninth Circuit will uphold the district court's decision, *id.* at 17, it is worth noting that the House did not seek en banc review of the *Massachusetts* case in the First Circuit when the panel decision was adverse to the House. And, neither the Department nor the *Golinski* plaintiff would have standing to seek such review if the *Golinski* court were to uphold the lower court's decision. Plaintiffs' comments are equally speculative in the event the *Golinski* panel decision upholds the constitutionality of DOMA Section 3. The House has no information, nor do the Plaintiffs cite any source, that *confirms* that the *Golinski* plaintiff and/or the Department would seek rehearing or en banc review in that case.

Plaintiffs also speculate, without reference to any facts of which we are aware, that the Ninth Circuit may never reach the constitutional issue in *Golinski* because, for example, the

(*Continued . . .*)

### III. The Jurisdictional Issue Raised by *Veterans for Common Sense* Also Counsels in Favor of a Stay.

In light of the recent *Veterans for Common Sense* decision, the House now has serious concerns that the VJRA may divest this Court of jurisdiction over this case. One possible way forward would be for this Court to stay its consideration of the merits of this case but direct the parties to brief the issue of the Court's subject matter jurisdiction.

However, given the procedural posture of *Veterans for Common Sense*, a complete stay at this time seems more advisable. The Ninth Circuit issued its en banc decision in that case on May 7, 2012. Thus, the *Veterans for Common Sense* plaintiffs' time to petition for certiorari has not yet run. Sup. Ct. R. 13.1. If the plaintiffs in that case seek Supreme Court review, it is quite possible that the Supreme Court will take the case because, as the Ninth Circuit itself noted, there is a split of authority in the circuits on the issue of whether the VJRA bars facial constitutional challenges to statues that impact VA benefits.[8] *Veterans for Common Sense*, 678 F.3d at 1033-34, *comparing, e.g., Zuspann v. Brown*, 60 F.3d 1156, 1159 (5th Cir. 1995) (noting if plaintiff had made "a facial challenge to a statute, then the district court [would have had] jurisdiction to hear his case," but ultimately dismissing because although plaintiff "attempt[ed] to fashion his

---

plaintiff may moot her own case by ending her federal employment. Pls.' Opp'n at 16. Such fervid speculation does little to advance the analysis here and, in any event, should this Court enter a stay, and should the *Golinski* appeal then become moot at some point in the future, this Court can revisit the stay issue at that time.

[8] The Ninth Circuit specifically carved out the question of whether "an individual seeking benefits would be barred by § 511 from bringing a facial challenge in the district court," i.e., the situation presented in this case. *See Veterans for Common Sense*, 678 F.3d at 1034. Because the Supreme Court may ultimately resolve the overarching question by finding that all facial challenges are barred by § 511, it is possible that this question will be answered even though it was not reached by the Ninth Circuit based on the particular facts before it in *Veterans for Common Sense*.

9

complaint in constitutional terms, his complaint [was] an individualized challenge to the VA's decision to deny him benefits"); *Larrabee ex rel. Jones v. Derwinski*, 968 F.2d 1497, 1501 (2d Cir. 1992) ("Although district courts continue to have jurisdiction to hear facial challenges of legislation affecting veterans' benefits, other constitutional and statutory claims must be pursued within the appellate mill Congress established in the VJRA.") (internal quotation omitted); *Dacoron v. Brown*, 4 Vet. App. 115, 119 (Ct. Vet. App. 1993) (concluding that § 511 does not bar facial constitutional challenges to a statute), *with Hicks v. Veterans Admin.*, 961 F.2d 1367, 1369-70 (8th Cir. 1992) (concluding that provisions of the VJRA "amply evince Congress's intent to include all issues, even constitutional ones, necessary to a decision which affects benefits in [an] exclusive appellate review scheme").

If this Court enters a stay in this case, and if (i) the plaintiffs in *Veterans for Common Sense* do not petition for certiorari, or (ii) the Supreme Court denies certiorari in that case, the House likely will request relief from any stay entered in this case to litigate the jurisdictional question (if the Department does not do so). The subject matter jurisdiction issue might well be dispositive of this case and could appropriately be litigated while a stay on the merits of Plaintiffs' constitutional questions remained in place.

## CONCLUSION

For all the foregoing reasons, the House's Motion to Stay Proceedings should be granted.

|   |   |
|---|---|
| 1 | Respectfully submitted, |
| 2 |  |
| 3 | By: /s/ Paul D. Clement |
|   | Paul D. Clement |
| 4 |  |
|   | BANCROFT PLLC[9] |
| 5 |  |
| 6 | *Counsel for Intervenor-Defendant the Bipartisan Legal Advisory Group of the U.S. House of Representatives* |
| 7 |  |
| 8 |  |
|   | June 25, 2012 |
| 9 |  |

---

[9] Kerry W. Kircher, as ECF filer of this document, attests that concurrence in the filing of the document has been obtained from signatory Paul D. Clement.

**CERTIFICATE OF SERVICE**

I certify that on June 25, 2012, I electronically filed the foregoing Reply in Support of Motion of Intervenor-Defendant to Stay Proceedings with the Clerk of Court by using the CM/ECF system, which provided an electronic notice and electronic link of the same to the following attorneys of record through the Court's CM/ECF system:

Caren E. Short, Esquire
Christine P. Sun, Esquire
Joseph J. Levin, Jr., Esquire
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, Alabama  36104
caren.short@splcenter.org
christine.sun@splcenter.org
joe.levin@splcenter.org

Daniel S. Noble, Esquire
WILMER CUTLER PICKERING HALE & DORR LLP
399 Park Avenue
New York City, New York  10022
daniel.noble@wilmerhale.com

Eugene Marder, Esquire
WILMER CUTLER PICKERING HALE & DORR LLP
950 Page Mill Road
Palo Alto, California  94304
eugene.marder@wilmerhale.com

```
 1    Randall R. Lee, Esquire
      Matthew D. Benedetto, Esquire
 2    WILMER CUTLER PICKERING HALE & DORR LLP
      350 South Grand Avenue Suite 2100
 3    Los Angeles, California  90071
      randall.lee@wilmerhale.com
 4    matthew.benedetto@wilmerhale.com
 5
 6    Jean Lin, Trial Attorney
      U.S. DEPARTMENT OF JUSTICE
 7    Civil Division - Federal Programs Branch
      20 Massachusetts Avenue, Northwest
 8    Washington, District of Columbia  20530
      jean.lin@usdoj.gov
 9
10
11
                      /s/ Mary Beth Walker
12                    Mary Beth Walker
13
```