UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACEY COOPER-HARRIS and MAGGIE COOPER-HARRIS,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>Defendants,<br><br>BIPARTISAN LEGAL ADVISORY GROUP OF THE U.S. HOUSE OF REPRESENTATIVES,<br><br>Intervenor-Defendant | No. 2:12-cv-00887-CBM (AJWx)<br><br>ORDER DENYING INTERVENOR-DEFENDANT'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DR. LAWRENCE J. KORB AND MAJ. GEN. (RET.) DENNIS LAICH |

The matter before the Court is Intervenor-Defendant Bipartisan Legal Advisory Group of the U.S. House of Representatives' ("BLAG") **Motion in Limine to Exclude the Expert Testimony of Dr. Lawrence J. Korb and Maj. Gen. (Ret.) Dennis Laich ("Mot.")**. [Docket No. 55.]

**I.    PROCEDURAL AND FACTUAL OVERVIEW**

The following is an overview of facts as alleged in Plaintiff's Complaint.

1

Plaintiff Tracey Cooper-Harris ("Tracey") and her same-sex spouse Maggie Cooper-Harris ("Maggie") (collectively, "Plaintiffs") were married in November 2008 in California. (Compl. ¶ 3.) Their marriage is recognized by the State of California, where they receive the same "status, responsibility, and protections as other legally married couples under state law." (*Id.*) Tracey had served in the United States Army for twelve years prior, with nine in active duty, which included missions in Iraq. (*Id.* at ¶ 2.) In 2003, Tracey completed her military service and was honorably discharged. (*Id.*)

In 2010, Tracey was diagnosed with multiple sclerosis. (*Id.* at ¶ 4.) In 2011, a U.S. Department of Veteran Affairs ("VA") hospital determined that Tracey's multiple sclerosis is service-connected. (*Id.* at ¶ 5.) This diagnosis prompted Tracey to begin making end-of-life preparations, as there is no known cure for the disease. (*Id.* at ¶ 4.) Additionally, Tracey suffers from post-traumatic stress disorder ("PTSD"). (*Id.* at ¶ 5.)

Tracey and Maggie are currently barred from receiving VA benefits for married veterans because the VA does not recognize their marriage. (*Id.* at ¶ 7.) These benefits include additional monthly income, and joint burial and monthly benefits to Maggie when Tracey dies. (*Id.* at ¶ 6.)

On April 19, 2011, Tracey filed a claim with the VA to have Maggie recognized as her spouse in order to receive additional benefits. (*Id.* at ¶¶ 9, 40.) This claim was denied by the VA Regional Office on May 2, 2011, because Title 38, the statute that governs veterans' benefits, defines a spouse as "a person of the opposite sex who is a wife or husband" and defines a "surviving spouse" similarly. (*Id.* at ¶ 41); 38 U.S.C. §§ 101(3), 101(31). Tracey then filed a Notice of Disagreement and requested a personal hearing. (Compl. ¶ 42.) After her hearing on June 22, 2011, her claim was again denied on August 8, 2011. (*Id.* at ¶¶ 42, 43.) The letter denying her claim stated that the VA did not recognize her marriage as it did not involve persons of the opposite sex. (*Id.* at ¶ 43.)

Along with Title 38, the Defense of Marriage Act ("DOMA") defines marriage for federal statutes as "a legal union between one man and one woman as husband and wife" and defines the word spouse as "a person of the opposite sex who is a husband or a wife." 1 U.S.C. § 7.

The present motion seeks to exclude all testimony from Dr. Korb and Gen. Laich "from any dispositive motions and responses thereto, and/or at trial." (Memorandum of Points and Authorities in Support of Motion ("Memo") at 1:7–8.) [Docket No. 56.]

## II. STANDARD OF LAW

A witness qualified as an expert may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue, the testimony is based on sufficient facts or data, the testimony is the product of reliable principles and methods, and the expert reliably applies the principles and methods to the facts of the case. FED. R. EVID. 702;[1] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993).

District courts have a gatekeeping role to conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is . . . valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *United States v. Freeman*, 498 F.3d 893, 901 (9th Cir. 2007) (quoting *Daubert*, 509 U.S. at 592–93). A trial court "must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (quoting *Daubert*, 509 U.S. at 597). The proponent of expert testimony bears the burden of establishing by a

---

[1] Federal Rule of Evidence 702 states: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

preponderance of the evidence that the testimony is admissible, but "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702 (advisory committee notes, 2000 amendments). The admissibility of expert opinion testimony generally turns on the following preliminary question-of-law determinations by the trial judge under Federal Rule of Evidence 104(a):

- Whether the opinion is based on scientific, technical, or other specialized knowledge;
- Whether the expert's opinion would assist the trier of fact in understanding the evidence or determining a fact in issue;
- Whether the expert has appropriate qualifications—i.e., some special knowledge, skill, experience, training or education on that subject matter;
- Whether the testimony is relevant and reliable;
- Whether the methodology or technique the expert uses "fits" the conclusions; and
- Whether its probative value is substantially outweighed by the risk of unfair prejudice, confusion of issues, or undue consumption of time.

*United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000).

### III.  DISCUSSION

**A.   Qualifications of These Experts**

    **1. Dr. Lawrence Korb**

Dr. Korb is a Senior Fellow at the Center for American Progress, a senior advisor to the Center for Defense Information, and an adjunct professor at Georgetown University.[2] (Plaintiffs' Memorandum of Law in Opposition to Intervenor-Defendant's Motion to Exclude the Expert Testimony of Dr. Lawrence

---

[2] The evidence does not state what Dr. Korb teaches at Georgetown University.

4

J. Korb and Maj. Gen. (Ret.) Dennis Laich ("Opp."), Ex. A.) [Docket No. 60.] Dr. Korb served as Assistant Secretary of Defense for Manpower, Reserve Affairs, Installations, and Logistics from 1981 through 1985. (*Id.*) There, he was responsible for administering approximately 70 percent of the defense budget of the United States, and was awarded the Department of Defense's Medal for Distinguished Public Service. (*Id.*) Dr. Korb has a Ph.D. in Political Science from the State University of New York at Albany and has held full-time teaching positions at multiple institutions. (*Id.* at 2.) Dr. Korb has authored, co-authored, or contributed to more than twenty books and written more than 100 articles on issues related to national defense and the treatment of military veterans. (*Id.*)

Dr. Korb qualified as an expert for the plaintiff in *Log Cabin Republicans v. United States*, the recent Central District of California case challenging the "Don't Ask, Don't Tell" policy. *See* 716 F. Supp. 2d 884, 916 (C.D. Cal. 2010), *vacated as moot after statute was repealed*, 658 F.3d 1162 (9th Cir. 2011).

**2. Major General (Ret.) Dennis Laich**

General Laich served in the United States Army for thirty-five years, retiring in 2006. (Rule 26(a)(2)(B) Expert Report of Major General (Ret.) Dennis Laich, Ex. A. ("Laich Report") ¶ 3 [Docket No. 56]; Ex. E [Docket No. 60].) As Major General, he had 5,000 troops under his command. (Laich Report ¶ 3.) General Laich served in a broad range of staff assignments primarily in personnel/administration, logistics and as an inspector general. (*Id.*) General Laich has experience shaping and implementing Department of Defense policies designed to enhance recruiting, retention, and readiness. (Ex. F at 41:18–22 (excerpts from transcript of deposition of General Laich) (hereinafter, "Laich Depo.").) [Docket No. 60.]

General Laich is a graduate of the Army Command and General Staff College, the National Security Management Program, and the Logistics Executive Development Program. (Laich Report ¶ 4.) He is also a graduate of the Army

War College. (*Id.*) The curricula of the Army War College addresses, among other things, so-called "manning the force" and allocating resources to "man the force" at the senior policy-making and execution level. (Laich Depo. at 105–06.) He is also a graduate of the Program for Senior Executives in National and International Security at the John F. Kennedy School of Government at Harvard University. (Laich Report ¶ 4.) He holds two master's degrees: a Master's in Business Administration from West Virginia University and a Master's of Arts in Labor Relations from St. Francis University. (*Id.*) General Laich earned an undergraduate degree in political science from Lafayette College. (*Id.*)

Currently, General Laich serves as the director of the Patriots Program at Ohio Dominican University—a program designed to encourage veterans to take advantage of their G.I. Bill educational benefits, a role in which General Laich is in regular contact with veterans concerning their benefits. (Id. ¶ 5; Laich Depo. at 31:12–25.) General Laich is currently writing a book entitled Skin in the Game, which is about the all-volunteer military. (Laich Report ¶ 9.)

General Laich served as an expert in *Witt v. U.S. Dept. of Air Force*, in which his testimony related to issues concerning policies that affected gay and lesbian personnel in the military. (*Id.* ¶ 8; *see generally* 739 F. Supp. 2d 1308 (W.D. Wash. 2010) (holding that application of Don't Ask, Don't Tell policy to plaintiff violated substantive due process rights).)

**B.   Proffers of These Experts**

**1.   Dr. Lawrence Korb**

Dr. Korb proffers the following expert opinions mostly *verbatim*:

- The definition of "spouse" and "surviving spouse" in Title 38 as well as DOMA are in direct conflict with the governmental purposes underpinning the enactment of veterans' benefit laws.
- Each branch of government has recognized that benefits for service members' family members are essential to a strong all-volunteer army. The armed forces

6

leadership has decided that provision of these benefits to service members and their families is necessary to ensure military readiness and encourage service members to choose the military for a lifelong career. Congress has agreed and established these benefits schemes.

- Congress has long regarded the spousal benefits provided under Title 38 as important incentives for service and reenlistment that recognize the sacrifices that military families must make while improving morale and providing reassurance to service members that their families will be supported and compensated for their service.
- In addition, service members' performance is affected by their knowledge that family members and spouses will be compensated and cared for should the service member suffer a disabling injury. Strong benefits programs and family support groups therefore ensure peace of mind and maintain military readiness.
- Denying benefits to spouses of gay and lesbian veterans, and them alone, frustrates the clear purpose of these Congressionally-created veterans' benefits: to compensate disabled veterans for their decreased ability to earn a living and support their families.
- Years of military experience have shown these benefits for service members and families to be *essential* to the proper functioning of the armed forces by ensuring that our men and women in uniform are capable of serving at their maximum potential. Denying these benefits to some service members diminishes military readiness and the effectiveness of the armed services by compromising their ability to focus on the singular task before them.
- Recruitment and retention of armed forces personnel, another major goal of strong veterans' benefits, is also harmed by continued denial of these benefits to individuals on the basis of sexual orientation and gender. These important benefits are crucial incentives for able service members to join and remain in the military; their denial to some service members thereby deprives the armed

services of an important tool.
- Recruitment and retention is harmed because this practice signals to young people considering enlisting that the military is an intolerant, archaic institution. Title 38 and Section 3 of DOMA are contrary to the stated military values of diversity, fairness, equality, and meritocracy.
- Military cohesion also suffers due to the creation of a two-tiered structure that requires the armed forces to treat service members differently, even though the different treatment has no relation to their performance.

(Rule 26(a)(2)(B) Expert Report of Dr. Lawrence J. Korb, Ex. B. ("Korb Report") ¶¶ 12, 16, 18, 21, 25, 27–30.) [Docket No. 56.]

**2. Major General (Ret.) Dennis Laich**

General Laich proffers the following expert opinions *verbatim*:
- Denying benefits to service members and their spouses who are in legal same-sex marriages is detrimental to an already strained military by discriminating against current and potential service members, thus discouraging the enlistment of capable soldiers, sailors, airmen, Coast Guardsmen, and Marines.
- Discriminating against service members and their spouses who are in legal same-sex marriages harms military recruitment, retention, and readiness by discouraging potential recruits; decreasing the likelihood that existing service members will re-enlist; destroying the peace of mind service members require to complete their mission; disturbing the cohesion of military units; weakening the military's credibility and integrity; and diminishing the positive impact of the repeal of "Don't Ask, Don't Tell."
- Defining "spouse" and "surviving spouse" as "a person of the opposite sex who is a wife or a husband" in Title 38 and restricting federal benefits dependent on marriage to those "between one man and one woman as husband and wife" pursuant to Section 3 of DOMA is harmful to the military and confers no benefit to the military.

8

(Laich Report ¶¶ 10–12.)

## C. Whether the Proffered Opinions Will Assist the Trier of Fact

BLAG's first basis for excluding these proposed experts' testimony is that their opinions will not assist the trier of fact because they are neither based on specific facts nor the product of any discernible methodology. BLAG argues that the witnesses' general statements regarding employee incentives and motivation are inadmissible, that their conclusions about the overall impact of DOMA and Title 38 on military goals are inadmissible, and that their testimony cannot be supported by vague assertions of experience.

### 1. The Witnesses' General Statements Regarding Employee Incentives and Motivation Are Admissible

"[E]xpert testimony is not 'helpful' to the trier of fact, and thus not relevant, when it addresses an issue that is within 'the common knowledge of the average layman.'" *Arjangrad v. JPMorgan Chase Bank, N.A.*, 3:10-CV-01157-PK, 2012 WL 1890372, at *7 (D. Or. May 23, 2012) (quoting *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001), *amended by* 246 F.3d 1150 (9th Cir. 2001); *see also Vallejo*, 237 F.3d at 1019 ("To be admissible, expert testimony must . . . address an issue beyond the common knowledge of the average layman . . . .").

Dr. Korb's and General Laich's proffered opinions are based on their extensive experience with questions of military recruitment, retention, readiness, and unit cohesion, and this experience exceeds the common knowledge of the average layman. This circuit has repeatedly upheld the admissibility of expert testimony premised on an expert's non-scientific experience and knowledge. *See, e.g., Hankey*, 203 F.3d at 1169 (upholding admission of testimony of police gang expert, whose expertise was based on "years of experience and special knowledge"); *United States v. Plunk*, 153 F.3d 1011, 1017 (9th Cir. 1998) (upholding admission of expert testimony from law enforcement officer regarding jargon of narcotics trade, on basis of expert's training, experience, and personal

9

knowledge), *overruled on other grounds by Hankey*, 203 F.3d at 1169 n.7; *Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1018 (9th Cir. 2004) (upholding admission of independent insurance consultant's testimony, based on his knowledge and experience, because "unlike scientific or technical testimony, the reliability of [his] testimony was not contingent upon a particular methodology or technical framework").

### 2. The Witnesses' Conclusions About the Overall Impact of DOMA and Title 38 on Military Goals Are Admissible

BLAG argues that the witnesses' testimony should be excluded as unreliable because of an "inability to quantify his or her general impressions." (Memo at 11:13.)  The Federal Rules of Evidence do not state such a rigid requirement to quantify.  As noted above, the Ninth Circuit has upheld the admissibility of experts relying primarily on knowledge and experience rather than a particular methodology or technical framework.  *See also United States v. Brownlee*, 454 F.3d 131, 144 (3d Cir. 2006) (psychologist's testimony); *United States v. Dailide*, 227 F.3d 385, 387 (6th Cir. 2000) (historian's testimony); *Scott v. Ross*, 140 F.3d 1275, 1286 (9th Cir. 1998) (sociologist's testimony).

### 3. The Witnesses' Testimony Can Be Supported by Assertions of Experience

> If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.  The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'

FED. R. EVID. 702 (advisory committee notes, 2000 amendments); *see also Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability.  Under *Daubert*, that's not enough.").

BLAG argues that these witnesses have failed to make this showing because nothing in their experience involved recruiting or retention issues relating to gay or lesbian servicemembers. To this point, Plaintiffs note that "the breadth and depth of [the witnesses'] expertise on these issues as they pertain to all servicemembers amply qualifies them to express their opinions on these issues as they relate to a subset of service members." (Opp. at 17:6–8.) In *Scott v. Ross*, the Ninth Circuit upheld the testimony of a sociologist opining on a social group he had not previously studied. 140 F.3d at 1286. Moreover, the witnesses explained in their depositions how their experience and knowledge lead them to their expert opinions.

The Court does not exclude the testimony on this ground, but does remind all parties that all expert witnesses will be required to supply adequate foundation for any expert opinion. These witnesses, for example, will be required to explain how their unique experience and knowledge leads to any expert opinion offered.

### D. BLAG's Remaining Argument Lacks Merit

BLAG's final argument is that "[n]either putative expert has an accurate understanding of what DOMA and Title 38's spousal definitions actually do, or how the law of marital recognition in the military and veteran's contexts would change if these statutes were eliminated." (Memo at 14:9–12.) The Court finds that this argument lacks merit and that the issues raised by BLAG go to the weight of the testimony rather than its admissibility.

### IV. CONCLUSION

The Court DENIES the motion for the reasons stated above.

**IT IS SO ORDERED.**

DATED: February 8, 2013          By _____
                                 CONSUELO B. MARSHALL
                                 UNITED STATES DISTRICT JUDGE