1  JOSEPH J. LEVIN, JR. (*Pro Hac Vice*)
   joe.levin@splcenter.org
2  CHRISTINE P. SUN (SBN 218701)
   christine.sun@splcenter.org
3  CAREN E. SHORT (*Pro Hac Vice*)
   caren.short@splcenter.org
4  SOUTHERN POVERTY LAW CENTER
   400 Washington Avenue
5  Montgomery, AL 36104
   Telephone:  (334) 956-8200
6  Facsimile:  (334) 956-8481

7  (*Caption Continued on Next Page*)

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                   **WESTERN DIVISION**

11

12  TRACEY COOPER-HARRIS and       )   No. 2:12-cv-887-CBM
    MAGGIE COOPER-HARRIS          )
13                                 )   **JOINT CONSOLIDATED**
              Plaintiffs,          )   **STATEMENT OF**
14                                 )   **UNCONTROVERTED AND**
              vs.                  )   **DISPUTED FACTS AND**
15                                 )   **DISPUTED CONCLUSIONS OF**
    UNITED STATES OF AMERICA;      )   **LAW**
16  ERIC H. HOLDER, JR., in his official )
    capacity as Attorney General; and  )   Hearing:  May 6, 2013
17  ERIC K. SHINSEKI, in his official  )   Time:  11:00 a.m.
    capacity as Secretary of Veterans  )   Hon. Consuelo B. Marshall
18  Affairs,                       )
                                   )
19            Defendants,          )
                                   )
20  BIPARTISAN LEGAL ADVISORY      )
    GROUP OF THE U.S. HOUSE        )
21  OF REPRESENTATIVES,            )
                                   )
22            Intervenor-Defendant. )

23

24

25

26

27

28

*WilmerHale*
350 South Grand Avenue, Suite 2100
Los Angeles, CA  90071

CASE NO. CV 12-887-CBM

ACTIVEUS 107746109v.1

1  Randall R. Lee (SBN 152672)
   randall.lee@wilmerhale.com
2  Matthew Benedetto (SBN 252379)
   matthew.benedetto@wilmerhale.com
3  WILMER CUTLER PICKERING HALE AND DORR LLP
   350 South Grand Avenue, Suite 2100
4  Los Angeles, CA 90071
   Telephone:  (213) 443-5300
5  Facsimile:  (213) 443-5400

6  Adam P. Romero (*Pro Hac Vice*)
   adam.romero@wilmerhale.com
7  Rubina Ali (*Pro Hac Vice*)
   rubina.ali@wilmerhale.com
8  WILMER CUTLER PICKERING HALE AND DORR LLP
   7 World Trade Center
9  New York, NY 10007
   Telephone:  (212) 230-8800
10 Facsimile:  (212) 230-8888

11 Eugene Marder (SBN 275762)
   eugene.marder@wilmerhale.com
12 WILMER CUTLER PICKERING HALE AND DORR LLP
   950 Page Mill Road
13 Palo Alto, California 94304
   Telephone:  (650) 858-6000
14 Facsimile:  (650) 858-6100

15 *Attorneys for Plaintiffs*

16

17 Paul D. Clement (DC Bar 433215)
   pclement@bancroftpllc.com
   H. Christopher Bartolomucci (DC Bar 453423)
18 cbartolomucci@bancroftpllc.com
   Nicholas J. Nelson (DC Bar 1001696)
19 nnelson@bancroftpllc.com

20 BANCROFT PLLC
   1919 M Street, N.W.
21 Suite 470
   Washington, D.C.  20036
22 202-234-0090 (telephone)
   202-234-2806 (facsimile)

23

24 *Of Counsel:*
   Kerry W. Kircher, General Counsel (DC Bar 386816)
   Kerry.Kircher@mail.house.gov
25 William Pittard, Deputy General Counsel (DC Bar 482949)
   William.Pittard@mail.house.gov
26 Christine Davenport, Senior Assistant Counsel (NJ Bar 043682000)
   Christine.Davenport@mail.house.gov
27 Todd B. Tatelman, Assistant Counsel (VA Bar 66008)

28

Todd.Tatelman@mail.house.gov
Mary Beth Walker, Assistant Counsel (DC Bar 501033)
MaryBeth.Walker@mail.house.gov
Eleni Roumel, Assistant Counsel (SC Bar 75763)
Eleni.Roumel@mail.house.gov

OFFICE OF GENERAL COUNSEL,
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C.  20515
202-225-9700 (telephone)
202-226-1360 (facsimile)

*Counsel for Intervenor-Defendant the Bipartisan
Legal Advisory Group of the U.S. House of Representatives*

JOINT CONSOLIDATED STATEMENT OF
UNCONTROVERTED AND DISPUTED FACTS AND
DISPUTED CONCLUSIONS OF LAW

CASE NO. CV 12-887-CBM

ActiveUS 107746109v.1

Pursuant to the Court's Order Requiring Consolidated Statement (ECF No. 112) (April 4, 2013), Plaintiffs Tracey Cooper-Harris and Maggie Cooper-Harris ("Plaintiffs") and Intervenor-Defendant the Bipartisan Legal Advisory Group of the U.S. House of Representatives ("House") submit the following Joint Consolidated Statement of Uncontroverted and Disputed Facts and Disputed Conclusions of Law.[1]

## A.   UNCONTROVERTED FACTS TO WHICH PLAINTIFFS AND THE HOUSE AGREE

| Uncontroverted Fact | Party Alleging | Supporting Evidence |
|---|---|---|
| 1.     Plaintiff Tracey Cooper-Harris ("Tracey") is a United States Army veteran. | Plaintiffs | Declaration of Tracey Cooper-Harris in Support of Plaintiffs' Motion for Summary Judgment ("Tracey Cooper-Harris Decl.") ¶ 4 (attached as Ex. C to the Declaration of Christine P. Sun ("Sun Decl.")) |
| 2.     Tracey was diagnosed by the Department of Veterans Affairs ("VA") with post-traumatic stress disorder ("PTSD"). | Plaintiffs | Tracey Cooper-Harris Decl. ¶ 11 |
| 3.     Tracey began experiencing the early symptoms of multiple sclerosis in December 2009. | Plaintiffs | Tracey Cooper-Harris Decl. ¶ 18 |

[1] Counsel for Federal Defendants have authorized undersigned counsel to indicate that Federal Defendants do not join in this statement because they understand the Court's April 4, 2013 Order to require the positions of the parties who have filed or opposed motions for summary judgment, and have also filed statements of uncontroverted facts and conclusions of law and responses to such statements.  The Federal Defendants have not moved for summary judgment, have not filed an opposition to the cross-motions for summary judgment filed by the House and Plaintiffs, and have not filed a statement of uncontroverted facts and conclusions of law, or responses to such statements filed by the House and Plaintiffs, that could be incorporated into a consolidated statement to assist the Court.  Out of an abundance of caution, however, Federal Defendants filed an ex parte application on April 11, 2013, seeking clarification from this Court that the term "parties" in its April 4 Order refers to the moving parties, Plaintiffs and the House.

JOINT CONSOLIDATED STATEMENT OF UNCONTROVERTED AND DISPUTED FACTS AND DISPUTED CONCLUSIONS OF LAW                              CASE NO. CV 12-887-CBM

1

ActiveUS 107746109v.1

| Uncontroverted Fact | Party Alleging | Supporting Evidence |
|---|---|---|
| 4.      In 2010, Tracey was diagnosed with multiple sclerosis by a neurologist at her local VA hospital | Plaintiffs | Tracey Cooper-Harris Decl. ¶ 18 |
| 5.      In 2011, the VA concluded that Tracey's multiple sclerosis is connected to her military service. | Plaintiffs | Tracey Cooper-Harris Decl. ¶ 18 |
| 6.      Military and veterans benefits are an important way in which the military facilitates recruitment and retention of service members, as well as helps to ensure unit cohesion and military readiness. | Plaintiffs | Expert Report of Dr. Lawrence J. Korb ("Korb Rep.") ¶ 21 (Sun Decl., Ex. E) Expert Report of Major General (Ret.) Dennis Laich ("Laich Rep.") ¶ 32 (Sun Decl., Ex. F) |
| 7.      The VA provides compensation for conditions and disabilities that the VA has determined are "service-connected" to veterans and their families. | Plaintiffs | U.S. Dep't of Veterans Affairs, *Federal Benefits for Veterans, Dependents and Survivors* 28-29 (2012), available at: http://www.va.gov/opa/publications/benefits_book/2012_Federal_benefits_ebook_final.pdf (hereinafter "*Federal Benefits for Veterans*") |
| 8.      For veterans rated as 30% disabled or higher, VA compensation increases when the veterans is married and/or has dependents. | Plaintiffs | *Federal Benefits for Veterans* 28-29 |
| 9.      Based on her service-connected multiple sclerosis, PTSD, and other conditions, Tracey is currently rated as 80% disabled. | Plaintiffs | Tracey Cooper-Harris Decl. ¶ 24 |

| Uncontroverted Fact | Party Alleging | Supporting Evidence |
|---|---|---|
| 10.    In August 2011, Tracey's claim for additional dependency compensation related to her wife Maggie was denied on the grounds that "[t]he veteran's marriage is not valid for VA purposes." | Plaintiffs | Tracey Cooper-Harris Decl. ¶ 26 |
| 11.    The military systematically attempted to screen out lesbians and gay men from the armed forces during World War II, and to discharge and deny benefits to those soldiers who were "discovered" later. | Plaintiffs | Expert Report of George Chauncey, Ph.D. ("Chauncey Rep.") ¶¶ 39-41 (Sun Decl., Ex. A) |
| 12.    All federal agencies were prohibited from hiring lesbians and gay men after World War II (a ban that lasted until 1975), and the federal government engaged in far-reaching surveillance and investigation to identify and purge supposed "homosexuals" from the federal civil service. | Plaintiffs | Chauncey Rep. ¶¶ 42-50 |
| 13.    Maggie and Tracey Cooper-Harris reside in California. | House | Tracey Cooper-Harris Decl. ¶ 3 |
| 14.    Maggie and Tracey Cooper-Harris obtained a marriage certificate from the state of California in 2008. | House | Tracey Cooper-Harris Decl. ¶ 3 |

| Uncontroverted Fact | Party Alleging | Supporting Evidence |
|---|---|---|
| 15.    Tracey Cooper-Harris served in the United States Army for approximately twelve years, and was honorably discharged in 2003. | House | Tracey Cooper-Harris Decl. ¶¶ 4, 8 |
| 16.    Tracey Cooper-Harris is currently receiving benefits from the Department of Veterans Affairs in connection with service-connected disabilities. | House | Tracey Cooper-Harris Decl. ¶¶ 23 |
| 17.    Tracey Cooper-Harris applied to add Maggie Cooper-Harris as a spouse for purposes of receiving additional dependency compensation from the VA, but was denied. | House | Tracey Cooper-Harris Decl. ¶¶ 25, 26 |

**B.     FACTS FOR WHICH THERE IS A GENUINE DISPUTE**

**1.     Undisputed Facts to Which the House Raises Objections[2]**

| Undisputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 1.   Tracey served in the United States Army for twelve years, nearly ten of them in active service. | Plaintiffs | Tracey Cooper-Harris Decl. ¶ 4 | Undisputed but not relevant or material to any issue in this case and therefore is not admissible evidence.[3] |
| 2.   Tracey enlisted in the Army in 1991, right after graduating high school, and was honorably discharged in June, 2003. | Plaintiffs | Tracey Cooper-Harris Decl. ¶ 3 | Undisputed but not relevant or material as to Tracey's age or educational status at enlistment and therefore is not admissible evidence. |

---

[2] Plaintiffs have not previously responded and do not now respond to BLAG's objections and arguments stated herein because the Local Rules of this Court do not provide that a party moving for summary judgment may reply to an opposing party's Local Rule 56-2 statement.  If it would assist the Court in deciding the pending cross-motions for summary judgment, Plaintiffs request the opportunity to respond to BLAG's baseless objections and incorrect arguments, whether in writing or orally before the Court.

It is the House's position that because the Local Rules do not permit such a response – as Plaintiffs admit – no such separate response should be permitted by this Court.  To the extent Plaintiffs wished to respond, they had ample opportunity to do so in their Reply in Support of Motion for Summary Judgment and Opposition to Intervenor-Defendant's Cross-Motion for Summary Judgment (ECF No. 114) (Apr. 8, 2013).  This request by Plaintiffs is also procedurally improper as it was not contemplated by the Court's April 4, 2013 Order.  To the extent the Plaintiffs seek special relief from this Court, they must do so by motion or by ex parte application.

[3] It is the House's position that rational basis review applies to Plaintiffs' equal protection challenge to DOMA Section 3 and Section 101.  Under rational basis review, the rationality of Section 3 and Section 101 "is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data."  *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993).  For this reason, most of the assertions that comprise Plaintiffs' "Undisputed Facts," are not relevant or material to the Court's disposition of their constitutional challenge to DOMA Section 3 and Section 101, if the Court finds that any plausible rational basis for the laws exists, whether supported by evidence or instead by "rational speculation."  *Id.*

| Undisputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 3.   Tracey was stationed at Bitburg Air Base in Germany, Brunswick Naval Air Station in Maine, and Yongsan Army Post in South Korea. | Plaintiffs | Tracey Cooper-Harris Decl. ¶ 4 | Undisputed but not relevant or material to any or material to any issue in this case and therefore is not admissible evidence. |
| 4.   After completing her active duty service, Tracey continued her military service in the Army Reserves with the 109th Medical Detachment out of Stanton, California. | Plaintiffs | Tracey Cooper-Harris Decl. ¶ 5 | Undisputed but not relevant or material to any issue in this case and therefore is not admissible evidence. |
| 5.   In October 2001, the United States commenced Operation Enduring Freedom in Afghanistan. | Plaintiffs | Tracey Cooper-Harris Decl. ¶ 6 | Undisputed but not relevant or material to any issue in this case and therefore is not admissible evidence. |
| 6.   In July 2002, Tracey was called back to active duty.  One month later, she reported to Camp Doha in Kuwait, where she was assigned to the 376th Expeditionary Medical Group, 376th Air Expeditionary Wing of the U.S. Air Force in Kyrgyzstan. | Plaintiffs | Tracey Cooper-Harris Decl. ¶ 6 | Undisputed, but the details of Plaintiff Tracey Cooper-Harris's service assignments are not relevant or material to any issue in this case and therefore are not admissible evidence. |
| 7.   Tracey was promoted to Sergeant around July, 2002. | Plaintiffs | Tracey Cooper-Harris Decl. ¶ 6 | Undisputed but not relevant or material to any issue in this case and therefore is not admissible evidence. |

| Undisputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 8.    While in Kyrgyzstan, Tracey provided medical care to over fifty Military Police dogs so that they could safeguard military bases and detect bombs and explosives to protect the lives of American troops. | Plaintiffs | Tracey Cooper-Harris Decl. ¶ 6 | Undisputed but not relevant or material to any issue in this case and therefore is not admissible evidence. |
| 9.    In February of 2003, Tracey was transferred back to Camp Doha. | Plaintiffs | Tracey Cooper-Harris Decl. ¶ 7 | Undisputed but not relevant or material to any issue in this case and therefore is not admissible evidence. |
| 10.  During Operation Iraqi Freedom, Tracey was sent on frequent missions into southern Iraq to assist military veterinarians and maintain the well-being of military working dogs. | Plaintiffs | Tracey Cooper-Harris Decl. ¶ 7 | Undisputed but not relevant or material to any issue in this case and therefore is not admissible evidence. |

| Undisputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 11.  During her military career, Tracey was awarded, among other honors, three Army Commendation Medals; the Air Force Commendation Medal; five Army Achievement Medals; the Armed Forces Reserve Medal with Mobilization Device; two National Defense Service Medals; an Iraq Campaign Medal with two Bronze Service Stars; the Global War on Terrorism Expeditionary Medal; and the Joint Meritorious Unit Award. | Plaintiffs | Tracey Cooper-Harris Decl. ¶ 9 | Undisputed but not relevant or material to any issue in this case and therefore is not admissible evidence. |
| 12.  Tracey's symptoms included avoidance of social situations, trouble sleeping, nightmares, and guilt for leaving her fellow soldiers. | Plaintiffs | Tracey Cooper-Harris Decl. ¶ 12 | Undisputed but not relevant or material to any issue in this case and therefore is not admissible evidence. |
| 13.  Tracey receives treatment for her PTSD at the VA. | Plaintiffs | Tracey Cooper-Harris Decl. ¶ 11 | Undisputed but not relevant or material to any issue in this case and therefore is not admissible evidence. |
| 14.  Tracey's PTSD symptoms are ongoing. | Plaintiffs | Tracey Cooper-Harris Decl. ¶ 11 | Undisputed but not relevant or material to any issue in this case and therefore is not admissible evidence. |
| 15.  Tracey joined a local rugby team after returning to California. | Plaintiffs | Tracey Cooper-Harris Decl. ¶ 13 | Undisputed but not relevant or material to any issue in this case and therefore is not admissible evidence. |

| Undisputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 16.  Tracey met Plaintiff Maggie Cooper-Harris ("Maggie") on her rugby team and they began dating in the fall of 2005. | Plaintiffs | Tracey Cooper-Harris Decl. ¶¶ 13-14 | Undisputed but not relevant or material to any issue in this case and therefore is not admissible evidence. |
| 17.  Tracey and Maggie married in November 2008, pursuant to a marriage license from the State of California. | Plaintiffs | Tracey Cooper-Harris Decl. ¶¶ 3, 15 ; Declaration of Maggie Cooper-Harris in Support of Plaintiffs' Motion for Summary Judgment ("Maggie Cooper-Harris Decl.") ¶ 3 (Sun Decl., Ex. B) | The House does not dispute that Plaintiffs celebrated a marriage ceremony in 2008, but the legal validity of that ceremony is not a question of fact, but is for the Court to determine as a matter of law. |
| 18.  The State of California provides Tracey and Maggie with the same status, responsibilities, and protections as other legally married couples under state law. | Plaintiffs | Tracey Cooper-Harris Decl. ¶ 3 | Whether the state of California "provides [Plaintiffs] with the same status, responsibilities, and protections as other legally married couples under state law" is not an assertion of fact but rather is for the Court to decide as a matter of law. |

| Undisputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 19.  The same-sex marriages that occurred in 2008, such as Tracey and Maggie's, remain valid and are recognized by California. | Plaintiffs | *Strauss v. Horton*, 46 Cal. 4th 364, 474, 93 Cal. Rptr. 3d 591, 207 P.3d 48 (2009) | Whether a same-sex couple, including Plaintiffs, "married" in 2008 in California were and continue to be a recognized as such is not a question of fact, but is for the Court to determine as a matter of law. |
| 20.  Tracey and Maggie currently reside together in Pasadena, California. | Plaintiffs | Tracey Cooper-Harris Decl. ¶ 3 | Undisputed but not relevant or material to any issue in this case and therefore is not admissible evidence. |
| 21.  Throughout their relationship, Maggie has stayed by Tracey's side during her nightmares, driven her to frequent counseling and other appointments, and dealt with her PTSD-induced conditions. | Plaintiffs | Tracey Cooper-Harris Decl. ¶ 17 Maggie Cooper-Harris Decl. ¶¶ 4-5 | Undisputed but not relevant or material to any issue in this case and therefore is not admissible evidence. |
| 22.  Maggie sacrifices days off and paid work days while helping to treat Tracey's PTSD. | Plaintiffs | Tracey Cooper-Harris Decl. ¶ 17 Maggie Cooper-Harris Decl. ¶ 4 | Undisputed but not relevant or material to any issue in this case and therefore is not admissible evidence. |
| 23.  Tracey's current symptoms include impaired vision, loss of balance, sharp electrical charges in different parts of her body, hand tremors, tingling in her extremities, and chronic fatigue. | Plaintiffs | Tracey Cooper-Harris Decl. ¶¶ 19-20 | Undisputed but not relevant or material to any issue in this case and therefore is not admissible evidence. |

| Undisputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 24.  Tracey receives disability compensation from the VA on account of her service-connected disabilities. | Plaintiffs | Tracey Cooper-Harris Decl. ¶ 24 | Undisputed to the extent that the list of reasons for providing benefits is not to be read as an exclusive list. |
| 25.  The United States government provides a number of benefits to active duty military service members, retired service members, and veterans to ease the burden that military service imposes on a service member and the service member's family, as well as to honor the veteran's service and the sacrifices made by the veteran's family. | Plaintiffs | Korb Rep. ¶ 21 Laich Rep. ¶¶ 23, 32 | The House does not dispute that the United States provides benefits to service members and veterans. The precise purposes for these benefits either are not relevant to any issue in this case and therefore not admissible evidence, or else are background questions for the court to determine as a matter of law. |
| 26.  Military leadership has made the professional judgment that provision of these benefits to service members and their families is necessary to encourage service members to choose military service as a lifelong career. | Plaintiffs | Korb Rep. ¶ 16 | The precise purposes for providing veterans benefits either are not relevant to any issue in this case and therefore not admissible evidence, or else are background questions for the court to determine as a matter of law. |
| 27.  Congress has concurred in that judgment and has established comprehensive benefits schemes for veterans and their spouses and dependents. | Plaintiffs | Korb Rep. ¶ 16 | The precise purposes for providing veterans benefits either are not relevant to any issue in this case and therefore are not admissible evidence, or else are background questions for the Court to determine as a matter of law. |

| Undisputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 28.  For disabled veterans married to persons of the opposite sex, the VA provides a number of significant benefits, including additional disability benefits. | Plaintiffs | Tracey Cooper-Harris Decl. ¶ 25 | The House does not dispute the assertion that the VA provides benefits to the opposite sex spouses of disabled veterans. However, Plaintiffs offer no accurate support for this conclusory statement, other than Plaintiff Tracey Cooper-Harris's self-serving declaration, which is not sufficient support on summary judgment. *See S.E.C. v. Phan*, 500 F.3d 895, 909-10 (9th Cir. 2007). |
| 29.  Title 38 of the United States Code states that: "In determining whether or not a person is or was the spouse of a veteran, their marriage shall be proven as valid for the purposes of all laws administered by the Secretary according to the law of the place where the parties resided at the time of the marriage or the law of the place where the parties resided when the right to benefits accrued." | Plaintiffs | 38 U.S.C. § 103(c) | Undisputed, but the contents of the U.S. Code are not a question of fact but one of law to be determined by the Court. |
| 30.  Title 38 defines the term "spouse" as "a person of the opposite sex who is a wife or husband." | Plaintiffs | 38 U.S.C. § 101(31) | Undisputed, but the contents of the U.S. Code are not a question of fact but one of law to be determined by the Court. |

| Undisputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 31.  Title 38 defines the term "surviving spouse" as "a person of the opposite sex who was the spouse of a veteran at the time of the veteran's death . . . ." | Plaintiffs | 38 U.S.C. § 101(3) | Undisputed, but the contents of the U.S. Code are not a question of fact but one of law to be determined by the Court. |
| 32.  38 U.S.C. §§ 101(3) & (31) bar the VA from recognizing Tracey and Maggie's marriage and thereby bar Tracey and Maggie from receiving certain benefits, including additional disability compensation. | Plaintiffs | Undisputed | The House does not dispute that Plaintiffs are a same-sex couple who are not eligible for spousal veterans' benefits, although this is not a question of fact, but for the Court to decide as a matter of law. This is illustrated by the fact that Plaintiffs cite no evidence in support of their contention. Moreover, whether 38 U.S.C. §§ 101(3) & (31) are the sole legal source of that ineligibility, or whether Plaintiffs would be independently barred by some other statute or regulation not at issue here and therefore lack standing to pursue their claims, also is for the Court to decide as a matter of law. |

| Undisputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 33.  Title 38's definitions of "spouse" and "surviving spouse" represent a legislative effort to create gender equality in the statute, and does not represent an effort to deny spousal benefits to same-sex spouses of veterans or to create a federal definition of marriage for the purpose of excluding same-sex couples. | Plaintiffs | S. Rep. No. 94-532, at 19-20 (1975) (emphasis added), *reprinted in* 1975 U.S.C.C.A.N. 2078, 2088-89. | The precise purposes motivating Title 38 either are not relevant to any issue in this case and therefore not admissible evidence, or else are background questions for the Court to determine as a matter of law. |
| 34.  The Senate Committee on Veterans Affairs explained that it "add[ed] the term 'spouse' to mean wife *or* husband and the term 'surviving spouse' to mean widow *or* widower" to the definition section of Title 38 and substituted these terms throughout the title in order "to eliminate unnecessary gender references." | Plaintiffs | S. Rep. No. 94-532, at 19-20 (1975) (emphasis added), *reprinted in* 1975 U.S.C.C.A.N. 2078, 2088-89. | Undisputed, but the precise purposes for these benefits either are not relevant to any issue in this case and therefore not admissible evidence, or else are background questions for the court to determine as a matter of law. |

| Undisputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 35.    Section 3 of DOMA provides, in pertinent part:<br>Sec. 3  DEFINITION OF MARRIAGE<br>(a) IN GENERAL – Chapter 1 of title 1, United States Code is amended by adding at the end of the following:<br>§7.  Definition of 'marriage' and 'spouse'<br>    "In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word 'marriage' means only a legal union between one man and one woman as husband and wife, and the word 'spouse' refers only to a person of the opposite sex who is a husband or a wife." | Plaintiffs | Pub. L. No. 104-199, 110 Stat. 2419 (1996) (codified as amended at 1 U.S.C. § 7) | Undisputed, but the contents of the U.S. Code are not a question of fact but one of law to be determined by the Court. |

| Undisputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 36.  DOMA's exclusion in 1996 of all same-sex couples who might one day get married from all federal marital protections and obligations was intended to: (a) "defend[] and nurtur[e] the institution of traditional, heterosexual marriage,"; (b) "promot[e] heterosexuality,"; (c) "encourag[e] responsible procreation and childrearing,"; (d) "protect[] . . . democratic self-governance,"; (e) "preserve scarce government resources" by preventing marital benefits from "hav[ing] to be made available to homosexual couples and surviving spouses of homosexual marriages,"; and (f) promote a "moral disapproval of homosexuality, and a moral conviction that heterosexuality better comports with traditional (especially Judeo-Christian) morality." | Plaintiffs | H.R. Rep. No. 104-664, at 12, 13 15 n.53, 16 (1996) | The House does not dispute that the cited House Report contains a nonexhaustive list of possible rationales of individual lawmakers for supporting DOMA; however, the contents of DOMA's legislative history, and the nature of the Congressional intent that motivated DOMA, are not questions of fact, but are for the Court to decide as a matter of law. |

| Undisputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 37. Section 3 of DOMA bars the VA from recognizing Tracey and Maggie's marriage and thereby bars Tracey and Maggie from receiving certain benefits, including additional disability compensation. | Plaintiffs | Undisputed | The House does not dispute that Plaintiffs are a same-sex couple who are not eligible for spousal veterans' benefits, although this is not a question of fact, but for the Court to decide as a matter of law. This is illustrated by the fact that Plaintiffs cite no evidence in support of this contention. Moreover, whether DOMA Section 3 is the sole legal source of that ineligibility, or whether Plaintiffs would be independently barred by some other statute or regulation and therefore lack standing to pursue their claims, also is for the Court to decide as a matter of law. |
| 38. Well into the twentieth century, the medical community condemned homosexuality as a "mental defect" or "disease." | Plaintiffs | Chauncey Rep. ¶¶ 26–27 | Undisputed, but Plaintiffs submit no evidence that medical views of homosexuality have themselves been based on bias, as opposed to past understandings of scientific knowledge. *See* Affidavit of George Chauncey, Ph.D. ("Chauncey Aff.") ¶¶ 26-27, attached as Nelson Decl. Ex. H. |

| Undisputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 39.  This ostensibly scientific view (now rejected) helped legitimize much anti-gay bias. | Plaintiffs | Chauncey Rep. ¶¶ 26–27 | Undisputed, but Plaintiffs submit no evidence that medical views of homosexuality have themselves been based on bias, as opposed to past understandings of scientific knowledge, and the House disputes any assertion thereof. *See* Chauncey Aff. ¶¶ 26-27, attached as Nelson Decl. Ex. H. |
| 40.  Government discrimination led to demonization of gays and lesbians in the media through the 1950's and 1960's. | Plaintiffs | Chauncey Rep. ¶¶ 51-55 | The House does not dispute that negative portrayals of gays and lesbians appeared in the media in the 1950s and 1960s, or that government discrimination contributed to the same. |
| 41.  Small advancements in civil rights for lesbians and gay men have been met with anti-gay backlash. | Plaintiffs | Chauncey Rep. ¶¶ 66-68 Expert Declaration of Gary Segura, Ph.D. ("Segura Rep.") ¶¶ 35–44 (Sun Decl., Ex. I) | The House does not dispute that political opposition to gay rights has sometimes continued or increased following political victories by gay and lesbian interest groups. |

| Undisputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 42.  Campaigns have spread persistent, false stereotypes of lesbians and gay men as child molesters, unfit parents, and threats to heterosexuals. | Plaintiffs | Chauncey Rep. ¶¶ 68–86 | The House does not dispute that some stereotyped political statements have been made regarding gays and lesbians, as they are about many social groups. |
| 43.  Lesbians and gay men are subjected to continued opprobrium from leading political and religious figures and the ever-present threat of anti-gay violence. | Plaintiffs | Chauncey Rep. ¶¶ 91–102 | The House does not dispute that some political and religious leaders continue to disapprove of homosexual conduct, that a smaller subset of those leaders may disapprove of homosexual individuals, or that some gay men or lesbians fear anti-gay violence some of the time. |
| 44.  Sexual orientation has no inherent association with a person's ability to participate in or contribute to society. | Plaintiffs | Peplau Rep. ¶ 29 | In the equal protection context, the ability of a class of persons "to contribute to society" is not a question of fact, but is for the Court to decide as a matter of law. |
| 45.  The Supreme Court has applied heightened scrutiny to statutes that rely on racial or sex-based classifications even after racial minorities and women had achieved far greater political victories against discrimination than lesbians and gay men have today. | Plaintiffs | Segura Rep. ¶¶ 81–85 | In the equal protection context, the quantum of political powerlessness suffered by a given class of people—especially as compared to another class—is not a question of fact, but is to be decided by the Court as a matter of law. *See Lyng*, 477 U.S. at 638. The same is true of the rules applied by the Supreme Court. |

| Undisputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 46.  There is no federal legislation prohibiting discrimination on the basis of sexual orientation in employment, education, access to public accommodations, or housing. | Plaintiffs | Segura Rep. ¶ 29 | Undisputed, but the import of federal law is not a question of fact but is to be answered by the Court as a matter of law. |
| 47.  Until 2009, when sexual orientation was added to federal anti-hate crime legislation (over significant opposition), no federal legislation had ever existed to protect individuals on the basis of sexual orientation. | Plaintiffs | Segura Rep. ¶ 31 | Undisputed, but the import of federal law is not a question of fact but is to be answered by the Court as a matter of law. |

| Undisputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 48.  The ability to procreate is not a precondition for marriage. | Plaintiffs | Expert Report of Nancy Cott ("Cott Rep.") ¶ 19 (Sun Decl., Ex. D) | Legal criteria for marriage eligibility in the states are not questions of fact but are for the Court to determine as a matter of law, although the House does not dispute that no state has placed upon an individual would-be spouse the burden of affirmatively proving that he or she individually is able to procreate. The Court, however, may take judicial notice of the fact that human procreation normally involves one man and one woman only, and that for more than two centuries after the Founding these parties and only these were permitted to enter marriage in every State. In addition, impotence has often been regarded as a ground for the dissolution of marriages. *See* Cott Dep. at 20:13-21:18, attached as Nelson Decl. Ex. D. |
| 49.  The federal government has not previously passed legislation to reconcile inconsistencies among state marriage laws. | Plaintiffs | Cott Rep. ¶¶ 24-64 | Undisputed, although the import of federal and state law is not a question of fact but is for the Court to decide as a matter of law. However, the federal government has certainly concerned itself with the definition of marriage in other contexts. |

2.      Facts for Which There Is a Genuine Dispute[4]

| Disputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 50. Tracey is likely to need a wheelchair, suffer limited vision or loss of vision, lose control over her neuromuscular function and coordination, experience difficulty communicating, and develop problems with her memory and temper. | Plaintiffs | Tracey Cooper-Harris Decl. ¶ 21 | Disputed because it calls for speculation, which Plaintiffs do not support with evidence (for example, medical records or medical expert testimony) other than her own conclusory, non-expert declaration. Such self-serving declarations must be disregarded on summary judgment where they state conclusions and are not (and, here, cannot be) based on personal knowledge. *See Phan*, 500 F.3d at 909-10. |

---

[4] *See supra* note 2.

| Disputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 51. The VA provides Disability and Indemnity Compensation ("DIC") to surviving spouses of (1) veterans whose death resulted from a service-connected injury or disease, and (2) veterans whose death resulted from a non-service-connected injury or disease and who were receiving, or entitled to receive, VA compensation for a service-connected disability that was rated as totally disabling for a specified number of years. | Plaintiffs | Federal Benefits for Veterans 101-03 | Disputed. Plaintiffs mischaracterize the cited supporting evidence regarding Dependency and Indemnity Compensation. The cited document speaks for itself. *See* U.S. Dep't of Veterans Affairs, *Federal Benefits for Veterans Dependents and Survivors*, at 101-103 (2012), *available at* http://www.va.gov/opa/publications/bene fits_book/2012_Federal_benefits_ebook_ final.pdf. |
| 52. Another important benefit that the VA provides to veterans and their spouses is burial benefits, including a gravesite at a veterans' cemetery; a government headstone or marker; and spousal burial with the veteran, even if the spouse predeceases the veteran. | Plaintiffs | Federal Benefits for Veterans 71 | Disputed. Plaintiff mischaracterizes the cited supporting evidence concerning Burial and Memorial Benefits, especially to the extent that Plaintiffs assert that burial benefits are available to all veterans or their spouses. The document cited for Plaintiffs' supporting evidence speaks for itself. *See* U.S. Dep't of Veterans Affairs, *Federal Benefits for Veterans Dependents and Survivors*, at 70-75 (2012). |

| Disputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 53. The Northern California Veteran's Cemetery has informed Tracey that while she could be buried in the cemetery, Maggie could not, because only opposite-sex spouses are eligible to be buried with their veteran spouses. | Plaintiffs | Tracey Cooper-Harris Decl. ¶ 27 | Disputed. Plaintiffs' assertion about what a third party may have told Plaintiff Tracey Cooper-Harris is hearsay and is therefore not admissible. Additionally, the allegation is not relevant or material to this action because claims about prospective burial rights are not ripe, as any applicable rights may be lost before death for various reasons. See U.S. Dep't of Veterans Affairs, Federal Benefits for Veterans Dependents and Survivors, at 70-75 (2012). |

JOINT CONSOLIDATED STATEMENT OF UNCONTROVERTED AND
DISPUTED FACTS AND DISPUTED CONCLUSIONS OF LAW                    CASE NO. CV 12-887-CBM

25

ActiveUS 107746109v.1

| Disputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 54. DOMA rewrites over 1000 federal laws attached more than 1000 different protections or obligations tied to marriage. | Plaintiffs | Gen. Accounting Office (GAO), GAO/OGC-97-16, Report on DOMA to the House Judiciary Committee (Jan. 31, 1997), available at: http://gao.gov/assets/230/223674.pdf. | The effect of a statute on other statutes and how many affected statutes there are is not a question of fact but is for the Court to determine as a matter of law. In any event, "rewrites" is an inaccurate description of what DOMA Section 3 does. DOMA merely reaffirms the definition of marriage already reflected in prior statutes, namely, the traditional definition of marriage as between one man and one woman. The House does not dispute that, according to the Government Accountability Office ("G.A.O."), as of 2004, there were 1,138 provisions in the U.S. Code "in which marital status is a factor in determining or receiving benefits, rights, and privileges." Letter from G.A.O. to Senator Bill Frist 1 (Jan. 23, 2004), GAO-04-353R, *Defense of Marriage Act*, *available at* http://www.gao.gov/new.items/d04353r.pdf. |

| Disputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 55. DOMA was enacted primarily based on "the animus toward, and moral rejection of, homosexuality and same-sex relationships [which] are apparent in the Congressional record." | Plaintiffs | *Dragovich v. United States Dep't of the Treasury*, 764 F. Supp. 2d 1178, 1190 (N.D. Cal. Jan. 18, 2011) | Disputed. The House vigorously denies Plaintiffs' claim that DOMA was passed "primarily based on 'animus.'" *See* 142 Cong. Rec. 17093-94 (1996); *id.* at 22467; 32 Weekly Comp. Pres. Doc. 1891 (Sept. 30, 1996); *Defense of Marriage Act: Hearing on H.R. 3396 Before the Subcomm. on the Constitution of the H. Comm. on the Judiciary*, 104th Cong. 32 (1996) ("House Hearing"); 142 Cong. Rec. 16796 (1996); H. Rep. No. 104-664, at 10 (1996), reprinted in 1996 U.S.C.C.A.N. 2905, 2914 ("House Report") ("[I]t can be stated with certainty that none of the federal statutes or regulations that use the words 'marriage' or 'spouse' were thought by even a single Member of Congress to refer to same-sex couples."); *id.* at 29 ("Section 3 merely restates the current understanding of what those terms mean for purposes of federal law."); 142 Cong. Rec. 16969 (1996) ("Section 3 changes nothing; it simply reaffirms existing law."); *see* Intervenor-Defendant's Mem. (*continued on next page*) |

| Disputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| | | | of P&A in Support of its Cross-Mot. for Summ. J. at 21-22 (Mar. 18, 2013) ("House Cross-Mot."); Intervenor-Defendant's Opp'n to Pl's Mot. for Summ. J. at 3-6 (Mar. 18, 2013) ("House Opp'n.), and citations therein. Plaintiffs sole purported "evidence" for this allegation is a non-binding district court judicial opinion, currently on appeal, which is not admissible evidence in support of this proposition. DOMA was signed into law with vast bipartisan support, under the signature of President Clinton. *See* 142 Cong. Rec. 17093-94 (1996) (House vote 342-67); *id*. at 22467 (Senate vote 85-14); 32 Weekly Comp. Pres. Doc. 1891 (Sept. 30, 1996); *see also* House Opp'n at 5, and citations therein. Moreover, the nature of Congress's and the President's intent in enacting DOMA is a matter for this Court to determine as a matter of law. |

| Disputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 56. In early colonial America, being identified as an individual who had same-sex sexual relations could endanger one's life. | Plaintiffs | Chauncey Rep. ¶ 19.6 | Undisputed in part, disputed in part. Colonial laws were aimed not at homosexual persons or conduct *per se* but rather at non-procreative sexual conduct in general. Dep. of George Chauncey, Ph.D. (July 12, 2011) ("Chauncey Dep.") at 34:9-34:24, attached as Nelson Decl. Ex. A. Furthermore, "[l]aws prohibiting sodomy do not seem to have been enforced against consenting adults acting in private." *Lawrence v. Texas*, 539 U.S. 558, 568 (2003). |
| 57. Sexual orientation is not correlated with any "'impairment in judgment, stability, reliability, or general social and vocational capabilities.'" | Plaintiffs | Expert Declaration of Letitia Anne Peplau, Ph.D ("Peplau Rep.") ¶ 30 (Sun Decl., Ex. H) | Disputed. In the equal protection context, the impact of a characteristic on one's "judgment, stability, reliability or general social and vocational capabilities" is not a question of fact, but is for the Court to decide as a matter of law. |

| Disputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 58. Major professional mental health organizations agree that sexual orientation is immutable and fundamental enough that no individual should be required to change it. | Plaintiffs | Peplau Rep. ¶¶ 10, 26, 27 | In the equal protection context, whether a characteristic is immutable is not a question of fact but is for the Court to decide as a matter of law. While the House does not dispute that sexual orientation is stable in many people, it disputes that "immutable" is an accurate descriptor for sexual orientation as a whole. For many persons, sexual orientation is fluid. Indeed, as Dr. Peplau admits, a person's sexual orientation often cannot "be readily categorized as heterosexual, homosexual, or perhaps bisexual. In fact, human experience often defies such clear-cut categories. Linda D. Garnets & Letitia Anne Peplau, *A New Paradigm for Women's Sexual Orientation: Implications for Therapy*, 24 Women & Therapy 111, 113 (2001); *see also* Affidavit of Letitia Anne Peplau, Ph.D. at ¶19, attached as Nelson Decl. Ex. K. Instead, according to the American Psychological Association, sexual orientations form a "continuum, (*continued on next page*) |

| Disputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| | | | from exclusive attraction to the other sex to exclusive attraction to the same sex." Am. Psychol. Ass'n, *Answers to Your Questions: For a Better Understanding of Sexual Orientation and Homosexuality*, http://www.apa.org/topics/sexuality/orientation.aspx. Whether individuals "should be required" to take any action is not a question of fact. |

| Disputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 59. Gay and lesbian individuals are politically disadvantaged and are not in a position to adequately protect themselves from the discriminatory wishes of the majoritarian public. | Plaintiffs | Segura Rep. ¶¶ 9-85 | Disputed. In the context of equal protection jurisprudence, whether a given class of persons has "political power" or is "politically vulnerable" is not a question of fact, but is for the Court to decide as a matter of law—one on which binding Ninth Circuit precedent contradicts Plaintiffs' contention. *High Tech Gays v. Def. Indus. Sec. Clearance Office,* 895 F.2d 563, 574 (9th Cir. 1990) ("[H]omosexuals are not without political power.") Moreover, in this very case Plaintiffs have demonstrated the significant political power that gays and lesbians hold and their successes in achieving their political goals. *See, e.g.,* Letter of Att'y Gen. Holder to Speaker Boehner of the U.S. House of Rep. (Feb. 23, 2011), attached as Exhibit I; see also House Opp'n at 19-21; Br. on the Merits for [the House] at 49-59, *Windsor v. United States,* No. 12-307 (S. Ct. Jan. 22, 2013), available at http://www.supremecourt.gov/docket/PDFs/12-307_Brief_on_the_Merits_for_ Respondent.pdf, and citations therein. |

| Disputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 60. Gay rights opponents have used state ballot initiatives and referenda to pass discriminatory laws or repeal protective ones and even to amend state constitutions to deny lesbians and gay men important protections. | Plaintiffs | Segura Rep. ¶ 36 (citing repeals of legislatively enacted anti-gay discrimination ordinances through popular vote mechanisms) Segura Rep. ¶¶ 37–38 (surveying anti-marriage initiatives) | Disputed in part, undisputed in part. The House does not dispute that laws classifying on the basis of sexual orientation have been enacted by ballot initiative or referendum with the support of opponents of gay rights, or that laws prohibiting private sexual-orientation classifications have been similarly repealed or prohibited in state constitutions. The House disputes any other characterization, including that laws upholding traditional marriage definitions are "discriminatory." Further, the House notes that gay rights supporters have used state ballot initiatives and referenda in their favor. *See* House Cross-Mot. at 22; House Opp'n at 22-25, and citations therein. |
| 61. Direct democracy has been used against lesbians and gay men more than any other group. | Plaintiffs | Segura Rep. ¶ 43 | Disputed. Plaintiffs have no reliable metric for determining how frequently direct democracy processes have been used "against" any "group." *See* Aff. of Gary Segura (June 24, 2011) ¶ 43, attached hereto as Nelson Decl. Ex. J. |

| Disputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 62. Recent political successes by gay men and lesbians do not mitigate a history of political disadvantage. | Plaintiffs | Segura Rep. ¶¶ 15–17 | In the equal protection context, the quantum of political powerlessness suffered by a given class of people is not a question of fact, but is to be decided by the Court as a matter of law. *See Lyng*, 477 U.S. at 638. Additionally, the Court may take judicial notice of the fact that gay and lesbian persons form a vastly smaller portion of the population than other groups that have received suspect class protection. Nevertheless, they have come to wield a degree of political power that is proportionately greater than those groups. *See* evidence cited in ¶¶ 59-60 (Section B.2.), *supra*. |

| Disputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 63. Recent political successes by gay men and lesbians fall short of demonstrating meaningful political capital. | Plaintiffs | Segura Rep. ¶ 32 | Disputed. In the equal protection context, the quantum of political powerlessness suffered by a given class of people is not a question of fact, but is to be decided by the Court as a matter of law. *See Lyng*, 477 U.S. at 638. In any event the opposite is true: political successes demonstrate that gays and lesbians have ample "political capital," that they and can and do succeed in redefining marriage through the political processes, and that any effort to redefine the institution of marriage is a matter best left in the hands of the elected, politically accountable branches of the federal government and the citizenry through that process. |

| Disputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 64. The undisputed scientific consensus is that a person's sexual orientation is enduring and stable, and not the result of personal choice. | Plaintiffs | Peplau Rep. ¶ 28 | Disputed. "Enduring" is not an accurate description of everyone's experience of sexual orientation. While the House does not dispute that sexual orientation is stable in many people, "enduring" is not an accurate description of everyone's experience of sexual orientation. For many persons, sexual orientation is fluid. Indeed, as Dr. Peplau admits, a person's sexual orientation often cannot "be readily categorized as heterosexual, homosexual, or perhaps bisexual. In fact, human experience often defies such clear-cut categories. Linda D. Garnets & Letitia Anne Peplau, *A New Paradigm for Women's Sexual Orientation: Implications for Therapy*, 24 Women & Therapy 111, 113 (2001); *see also* Affidavit of Letitia Anne Peplau, Ph.D. at ¶19, attached as Nelson Decl. Ex. K. Instead, according to the American Psychological Association, sexual orientations form a "continuum, from exclusive attraction to the other sex to (*continued on next page*) |

| Disputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| | | | exclusive attraction to the same sex." Am. Psychol. Ass'n, *Answers to Your Questions: For a Better Understanding of Sexual Orientation and Homosexuality*, http://www.apa.org/topics/sexuality/orientation.aspx; *see also* Nigel Dickson, *et al.*, *Same Sex Attracting in a Birth Cohort: Prevalence and Persistence in Early Adulthood*, 56 Soc. Sci. & Med. 1607, 1612-13 (2003) (at age 21 "[t]en percent of men and nearly a quarter of the women [in the study group] reported same-sex attraction at any time, but this nearly halved for current attraction at age 26").  There is no "undisputed scientific consensus" as Plaintiffs allege. |

| Disputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 65. The sexual orientation of a child's parents is not proven to have any effect on that child's upbringing and well-being. | Plaintiffs | Expert Report of Michael E. Lamb ("Lamb Rep.") ¶¶ 13, 18-20, 23-37 (Sun Decl., Ex. G) | Disputed. Homosexuals of course can be good parents, but the House disputes that there is no proof that parents' sexual orientation can have an effect on a child's upbringing. The House maintains that our society's preference, other things being equal, for two biological parents to raise their own children, is fully rational. *Hernandez v. Robles,* 7 N.Y.3d 338 (N.Y. 2006); *see also* House Cross-Mot. at 19-22, and citations therein. |
| 66. DOMA does not prevent gay and lesbian couples from raising children, but does deprive children of such couples from the advantages of a stable family recognized by federal law. | Plaintiffs | Lamb Rep. ¶¶ 41–42 | The legal effects of a federal statute are not a question of fact, but are for the Court to determine as a matter of law. Nevertheless, the House does not dispute that DOMA does not prevent gay and lesbian couples from raising children. Although it is a question of law, the House vigorously disputes that DOMA prevents the federal recognition of "families" headed by same-sex couples; DOMA does not purport to define the term "family" and the executive branch recently and prominently has interpreted (*continued on next page*) |

| Disputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| | | | it in federal law to include same-sex couples. *See, e.g., See* Presidential Mem., *Extension of Benefits to Same-Sex Domestic Partners of Federal Employees*, 75 Fed. Reg. 32,247 (June 2, 2010) (directing the Office of Personnel Management to "clarify that, for purposes of employee assistance programs, same-sex domestic partners and their children qualify as family members'"); DoD Extends Eligibility for Benefits to Same-Sex Partners, National Military Family Association, *available at* http://www.militaryfamily.org/feature-articles/dod-extends-eligibility-for.html (hospital visitation benefits and unit-based Family Readiness Groups *are open to same sex couples*, along with a host of other family benefits to become available in August 2013). |

| Disputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 67. The recognition of the marriages of same-sex couples would increase annual net federal revenue. | Plaintiffs | Cong. Budget Off., U.S. Cong., The Potential Budgetary Impact of Recognizing Same-Sex Marriages 1 (June 21, 2004), available at http://www.cbo.gov/ftpdocs/55xx/doc5559/06-21-SameSexMarriage.pdf | Disputed. The Congressional Budget Office Report is an estimate, as stated in the report itself, this estimate assumes "that same-sex marriages are legalized in all 50 states and recognized by the federal government," Cong. Budget Office, *The Potential Budgetary Impact of Recognizing Same-Sex Marriages*, at 1 (June 21, 2004), http://cbo.gov/ftpdocs/55xx/doc5559/06-21-SameSexMarriage.pdf, and the estimate may be susceptible to other methodological shortcomings or infirmities. |
| 68. Neither the Department of Defense nor the Department of Veterans Affairs identified any justification for treating same-spouses differently than opposite-sex spouses. | Plaintiffs | ECF No. 16-3 at 2. | The contents and legal import of the parties' filings in this case are not questions of fact but are to be determined by the Court as matters of law. |

| Disputed Fact | Party Alleging | Supporting Evidence | House's Position |
|---|---|---|---|
| 69. Title 38 undermines military recruiting, retention, readiness, and cohesion by preventing gay and lesbian veterans from receiving the same benefits as their heterosexual counterparts. | Plaintiffs | Laich Rep. ¶¶ 17-19, 21-33 Korb Rep. ¶¶ 27-30 | Disputed. Plaintiffs' experts fail to invoke any facts, data, or methodology to support these conclusions, *see, e.g.*, Mem. of P. & A. in Supp. of Mot. to Exclude the Expert Test. of Dr. Lawrence J. Korb & Maj. Gen. (Ret) Dennis Laich at 3 (Nov. 6, 2012) (ECF No. 56); Korb Dep. 58:12-20, attached to Nelson Decl. at Ex. G. |
| 70. Title 38 is antithetical to the military's commitment to caring and providing for the families of veterans, particularly injured veterans. | Plaintiffs | Korb Rep. ¶ 26 | Disputed. Whether Title 38 is "antithetical to the military's commitment to caring and providing for the families of veterans" is either a question of law or matter of unreviewable opinion. |

C.      UNDISPUTED CONCLUSIONS OF LAW

The House disputes each and every conclusion of law asserted by the Plaintiffs. The Plaintiffs dispute each

and every conclusion of law asserted by the House.

D.      DISPUTED CONCLUSIONS OF LAW

| Conclusion of Law | Party Alleging | Party Disputing |
| --- | --- | --- |
| 1.    Unlike similarly-situated veterans and their opposite-sex spouses, Tracey and Maggie are denied certain veterans benefits because 38 U.S.C. §§ 101(3) & (31) ("Title 38") and Section 3 of 1 U.S.C. § 7 ("DOMA") separately proscribe the federal government from recognizing Tracey and Maggie's valid same-sex marriage. | Plaintiffs | House |
| 2.    It is undisputed that Tracey and Maggie are in a valid same-sex marriage and have been injured by virtue of being denied various benefits routinely provided to veterans with opposite-sex spouses; therefore, the only issue in this case is whether their injury violates the Constitution's equal protection guarantee. | Plaintiffs | House |
| 3.    There is no genuine issue as to any material fact and Tracey and Maggie are entitled to summary judgment as a matter of law, because the discrimination described in conclusion of law 1 violates the Fifth Amendment to the United States Constitution. | Plaintiffs | House |
| 4.    Title 38 governs veterans benefits and recognizes that the federal government should defer to the states when determining whether a person is legally married. | Plaintiffs | House |
| 5.    Other sections of Title 38, however, define the term "spouse" as "a person of the opposite sex who is a wife or husband" and  the term "surviving spouse" as "a person of the opposite sex who was the spouse of a veteran at the time of the veteran's death . . . ." | Plaintiffs | House |

Joint Consolidated Statement of Uncontroverted and            CASE NO. CV 12-887-CBM
Disputed Facts and Disputed Conclusions of Law
                                                42
ActiveUS 107746109v.1

| Conclusion of Law | Party Alleging | Party Disputing |
|---|---|---|
| 6.   Title 38's definition of "spouse" as a "person of the opposite sex" does not reflect Congressional intent to preclude veterans in same-sex marriages from obtaining spousal benefits but rather manifests a legislative effort to create gender equality in the statute. | Plaintiffs | House |
| 7.   Even if the definitions of "spouse" and "surviving spouse" in Title 38 included same-sex spouses, Section 3 of the Defense of Marriage Act ("DOMA") would prohibit the VA from recognizing Tracey and Maggie's marriage for purposes of determining the couple's eligibility to receive benefits. | Plaintiffs | House |
| 8.   DOMA overturned the federal government's long-standing practice of deferring to state determinations of marital status, despite significant variation in marriage laws from state to state. | Plaintiffs | House |
| 9.   DOMA was enacted primarily based on "the animus toward, and moral rejection of, homosexuality and same-sex relationships [which] are apparent in the Congressional record." | Plaintiffs | House |
| 10.  DOMA and Title 38 discriminate on the basis of sexual orientation by classifying legally married couples into two distinct groups—married straight couples and married gay couples—and subjects the latter to disparate treatment by, among other things, denying them over 1,000 federal protections and obligations. | Plaintiffs | House |
| 11.  Treating lesbians and gay men differently than heterosexual people is sexual orientation discrimination. | Plaintiffs | House |
| 12.  The appropriate level of scrutiny for sexual orientation classifications is unsettled under Supreme Court and Ninth Circuit jurisprudence. | Plaintiffs | House |

JOINT CONSOLIDATED STATEMENT OF UNCONTROVERTED AND
DISPUTED FACTS AND DISPUTED CONCLUSIONS OF LAW                    CASE NO. CV 12-887-CBM

43

ActiveUS 107746109v.1

| Conclusion of Law | Party Alleging | Party Disputing |
|---|---|---|
| 13.  The Supreme Court has considered the following factors in determining whether a legislative classification should be treated with suspicion and subjected to heightened scrutiny: "(1) the history of invidious discrimination against the class burdened by the legislation; (2) whether the characteristics that distinguish the class indicate a typical class member's ability to contribute to society; (3) whether the distinguishing characteristics are 'immutable' or beyond the class members' control; and (4) the political power of the subject class." | Plaintiffs | House |
| 14.  No single factor is dispositive, and immutability and lack of political power are not strictly necessary factors to identify a suspect class. | Plaintiffs | House |
| 15.  The existence of any one of the factors can serve as a warning sign that a particular classification is "more likely than others to reflect deep-seated prejudice rather than legislative rationality in pursuit of some legitimate objective." | Plaintiffs | House |
| 16.  Lesbians and gay men have suffered a history of discrimination. | Plaintiffs | House |
| 17.  In 2003, the Supreme Court overturned *Bowers v. Hardwick*, and held that "*Bowers* was not correct when it was decided, and it is not correct today." | Plaintiffs | House |
| 18.  Until judicial intervention in 2003, states were able to "demean [lesbians' and gay men's] existence or control their destiny by making their private sexual conduct a crime." | Plaintiffs | House |
| 19.  The history of discrimination against homosexuals strongly favors application of heightened scrutiny to classifications based on sexual orientation. | Plaintiffs | House |
| 20.  Sexual orientation bears no relation to an individual's ability to perform or contribute to society. | Plaintiffs | House |

| Conclusion of Law | Party Alleging | Party Disputing |
|---|---|---|
| 21.  Sexual orientation thus satisfies the two essential heightened scrutiny factors. | Plaintiffs | House |
| 22.  Legislation should not burden individuals on the basis of a core trait that they cannot or should not have to change. | Plaintiffs | House |
| 23.  A defining characteristic need not be absolutely unchangeable for it to form the basis of a suspect classification. | Plaintiffs | House |
| 24.  Sexual orientation is a defining characteristic and, when manifest, invites discrimination. | Plaintiffs | House |
| 25.  Sexual orientation is immutable and fundamental enough that no individual should be required to change it. | Plaintiffs | House |
| 26.  Because sexual orientation is a distinguishing characteristic, a core part of a person's identity, and immutable or highly resistant to change, this factor also favors heightened scrutiny. | Plaintiffs | House |
| 27.  Lesbians and gay men lack political power because they "are not in a position to adequately protect themselves from the discriminatory wishes of the majoritarian public." | Plaintiffs | House |
| 28.  Ongoing antipathy against gays and lesbians requires greater judicial oversight. | Plaintiffs | House |
| 29.  Gay rights opponents have used state ballot initiatives and referenda to pass discriminatory laws or repeal protective ones and even to amend state constitutions to deny lesbians and gay men important protections. | Plaintiffs | House |
| 30.  Recent political successes by gay men and lesbians does not mitigate a history of political disadvantage. | Plaintiffs | House |
| 31.  Political disadvantage is not necessarily required for a classification to be treated as suspect, but this factor too supports application of heightened scrutiny to sexual orientation discrimination. | Plaintiffs | House |

| Conclusion of Law | Party Alleging | Party Disputing |
|---|---|---|
| 32.  Because sexual orientation satisfies both of the two essential factors relevant to determining if a classification is suspect, as well as the two additional criteria that courts sometimes rely upon, DOMA's and Title 38's exclusion of married same-sex couples from veterans benefits should be subject to strict or, at the very least, intermediate scrutiny. | Plaintiffs | House |
| 33.  DOMA and Title 38 are subject to heightened scrutiny because they discriminate based on sex. | Plaintiffs | House |
| 34.  Sex-based classifications are entitled to intermediate scrutiny. | Plaintiffs | House |
| 35.  To survive strict scrutiny, BLAG must prove that the classification at issue is "narrowly tailored" and furthers "compelling governmental interests." | Plaintiffs | House |
| 36.  Under intermediate scrutiny, BLAG must establish that the classification is "substantially related" to an "important governmental objective." | Plaintiffs | House |
| 37.  Under both strict scrutiny and intermediate scrutiny, a statute must be defended by reference to the "actual [governmental] purpose" behind it, and not after-the-fact "rationalizations." | Plaintiffs | House |
| 38.  BLAG does not meet its burden to demonstrate that DOMA's and Title 38's disparate treatment of married same-sex couples serves any compelling or important state interest, much less one that is narrowly tailored or substantially related to an important governmental objective. | Plaintiffs | House |
| 39.  DOMA and Title 38 fail even the more lenient rational basis standard. | Plaintiffs | House |
| 40.  Under rational basis review, a statute will be upheld as constitutional "if the classification drawn by the statute is rationally related to a legitimate state interest." | Plaintiffs | House |

| Conclusion of Law | Party Alleging | Party Disputing |
|---|---|---|
| 41.  Rational basis review requires "some relation between the classification and the purpose it serve[s]." | Plaintiffs | House |
| 42.  The challenged discrimination itself must rationally advance a legitimate governmental interest. | Plaintiffs | House |
| 43.  Courts have used rational basis to strike down illegitimate legislation | Plaintiffs | House |
| 44.  A classification fails rational basis if "so attenuated as to render the distinction arbitrary or irrational." | Plaintiffs | House |
| 45.  Under *Romer*, the interests of protecting religious liberties of landlords and employers and conserving state resources to fight discrimination were considered "too far removed" from its ban on antidiscrimination protection for gay men and lesbians. | Plaintiffs | House |
| 46.  DOMA's exclusion in 1996 of all same-sex couples who might one day get married from all federal marital protections and obligations was intended to: (a) "defend[] and nurtur[e] the institution of traditional, heterosexual marriage,"; (b) "promot[e] heterosexuality,"; (c) "encourag[e] responsible procreation and childrearing,"; (d) "protect[] . . . democratic self-governance"; (e) "preserve scarce government resources" by preventing marital benefits from "hav[ing] to be made available to homosexual couples and surviving spouses of homosexual marriages,"; and (f) promote a "moral disapproval of homosexuality, and a moral conviction that heterosexuality better comports with traditional (especially Judeo-Christian) morality." | Plaintiffs | House |
| 47.  None of Congress's purported justifications satisfy the rational basis scrutiny, let alone heightened scrutiny. | Plaintiffs | House |
| 48.  Preserving "traditional" marriage is not a legitimate government interest. | Plaintiffs | House |

| Conclusion of Law | Party Alleging | Party Disputing |
|---|---|---|
| 49.  "Tradition" alone cannot justify the government's discrimination against a class of individuals. | Plaintiffs | House |
| 50.  Historical denial of the right of marriage to gay men and lesbians cannot provide the necessary independent basis for the federal government's disregard of existing state-approved marriages of same-sex couples and cannot provide a rational basis for DOMA's denigration of married same-sex couples. | Plaintiffs | House |
| 51.  DOMA does not does not promote heterosexuality and does not "encourage [gay men and lesbians] to enter into marriages with members of the opposite sex." | Plaintiffs | House |
| 52.  DOMA does not advance any legitimate interest in child-rearing | Plaintiffs | House |
| 53.  The ability to procreate is not a precondition for marriage. | Plaintiffs | House |
| 54.  DOMA excludes married same-sex couples not just from federal recognition of their relationship in contexts relating to children or procreation, but in every one of the federal statutes and programs that relate to marriage in any way. | Plaintiffs | House |
| 55.  DOMA's sweeping breadth, and the striking disconnect between the classification and the purported purpose, make it "impossible to credit" that this law was crafted to promote child-rearing by heterosexuals. | Plaintiffs | House |
| 56.  Because it is beyond scientific dispute that a child's adjustment is not determined by his parents' sexual orientation, any suggestion by DOMA's defenders that it advances a legitimate interest in ensuring that children will be better adjusted cannot provide a rational basis for DOMA's discrimination. | Plaintiffs | House |

| Conclusion of Law | Party Alleging | Party Disputing |
|---|---|---|
| 57.  DOMA actually works directly contrary to promoting child-rearing because it "prevent[s] children of same-sex couples from enjoying the immeasurable advantages that flow from the assurance of a stable family structure when afforded equal recognition under federal law." | Plaintiffs | House |
| 58.  DOMA does not prevent gay and lesbian couples from raising children, but does deprive children of such couples from the advantages of a stable family recognized by federal law. | Plaintiffs | House |
| 59.  DOMA undermines democratic self-governance. | Plaintiffs | House |
| 60.  DOMA does not conserve resources. | Plaintiffs | House |
| 61.  Cost-cutting measures alone cannot be an important or compelling government interest. | Plaintiffs | House |
| 62.  A cost-saving measure cannot be underinclusive or arbitrary to pass the rational basis test. | Plaintiffs | House |
| 63.  DOMA was intended to express the "moral disapproval of homosexuality, and a moral conviction that heterosexuality better comports with traditional (especially Judeo- Christian) morality." | Plaintiffs | House |
| 64.  Animus against gay men and lesbians cannot serve as a legitimate, important, or compelling government interest. | Plaintiffs | House |
| 65.  The federal government has not previously passed legislation to reconcile inconsistencies among state marriage laws. | Plaintiffs | House |
| 66.  The passage of DOMA changed the status quo with regard to federal regulation of marriage law. | Plaintiffs | House |

| Conclusion of Law | Party Alleging | Party Disputing |
|---|---|---|
| 67.  DOMA's sweeping breadth—including denying legally married couples recognition of their marriage for purposes of the marital exemption to the federal estate tax; denying married lesbian and gay federal employees the ability to provide health insurance to their spouses; and preventing married bi-national same-sex couples from remaining together in the United States in the ways available to straight couples—makes it impossible to explain the exclusion of married same-sex couples from those benefits and protections by anything other than sheer animus. | Plaintiffs | House |
| 68.  Because, under our constitutional framework, the government needs more than animus to justify the harms that DOMA imposes on married same-sex couples, the statute fails even rational basis review. | Plaintiffs | House |
| 69.  No justification can be asserted for Title 38 that would establish a rational basis for discriminating against veterans in legal same-sex marriages | Plaintiffs | House |
| 70.  Nothing in Title 38's legislative history suggests that Congress intended to deny veterans benefits on the basis of sexual orientation; on the contrary, Congressional intent was to promote equality of the sexes and expand the availability of veterans' benefits. | Plaintiffs | House |
| 71.  The categorical exclusion of same-sex marriages is wholly inconsistent with Congress's stated purpose in amending Title 38 because the statute in fact promotes gender *inequality* by discriminating against Tracey and those similarly-situated to her solely because she is a woman married to a woman. | Plaintiffs | House |

| Conclusion of Law | Party Alleging | Party Disputing |
|---|---|---|
| 72.  The discrimination created by Title 38 is not rationally related to any military purpose because this discrimination does not advance any military interests and actually undermines military recruiting, retention, readiness, and cohesion in direct conflict with the governmental purposes underpinning veterans benefits. | Plaintiffs | House |
| 73.  Title 38 is antithetical to the military's commitments to caring for and providing for the families of veterans—particularly those veterans who are injured while serving. | Plaintiffs | House |
| 74.  For all of the above reasons, DOMA is unconstitutional as applied to Plaintiffs and Title 38 is unconstitutional on its face, and Plaintiffs are entitled to summary judgment on their first and second claims for relief. | Plaintiffs | House |
| 75.  Plaintiffs are entitled to a permanent injunction barring Defendants from relying on DOMA or Title 38 to deny recognition of Plaintiffs' valid marriage. | Plaintiffs | House |
| 76.  Plaintiffs are the prevailing party for the purposes of 28 U.S.C. § 2412. | Plaintiffs | House |
| 77.  Plaintiffs' Complaint fails to state a claim on which relief may be granted. | House | Plaintiffs |
| 78.  Section 3 of the Defense of Marriage Act, Pub. L. No. 104-199, 110 Stat. 2419 (1996), codified at 1 U.S.C. § 7, and Section 101(31) of Title 38 of the United States Code are consistent with, and do not violate, the equal protection or substantive due process components of the Due Process Clause of the Fifth Amendment of the U.S. Constitution, along with all other provisions of the U.S. Constitution. | House | Plaintiffs |
| 79.  Plaintiffs lack standing to bring certain of their claims. | House | Plaintiffs |
| 80.  Certain of Plaintiffs claims are not ripe. | House | Plaintiffs |
| 81.  Plaintiffs have failed to exhaust their administrative remedies. | House | Plaintiffs |

| Conclusion of Law | Party Alleging | Party Disputing |
|---|---|---|
| 82.  Plaintiffs' claims are barred by sovereign immunity under 5 U.S.C. § 704 because Plaintiffs have expressly denied that they are challenging specific agency action and because there is another "adequate remedy" available to Plaintiffs, namely review through the process provided by the Veterans Judicial Review Act. | House | Plaintiffs |
| 83.  The Court lacks jurisdiction to hear Plaintiffs' claims. | House | Plaintiffs |
| 84.  The House is not liable for any party's costs or attorneys' fees. | House | Plaintiffs |

Respectfully submitted,

Dated:  April 12, 2013                SOUTHERN POVERTY LAW CENTER

WILMER CUTLER PICKERING HALE AND DORR LLP

BY:    /s/  Adam P. Romero

ADAM P. ROMERO
7 World Trade Center
New York, NY 10007
(212) 295-6422
adam.romero@wilmerhale.com

*Attorneys for Plaintiffs*

BANCROFT PLLC

BY:     */s/ H. Christopher Bartolomucci*

H. CHRISTOPHER BARTOLOMUCCI
1919 M Street, N.W.
Suite 470
Washington, D.C.  20036
(202) 234-0090
cbartolomucci@bancroftpllc.com

*Counsel for Intervenor-Defendant the Bipartisan Legal Advisory Group of the U.S. House of Representatives*[5]

---

[5]  The Bipartisan Legal Advisory Group, which speaks for the House in litigation matters, currently is comprised of the Honorable John A. Boehner, Speaker of the House, the Honorable Eric Cantor, Majority Leader, the Honorable Kevin McCarthy, Majority Whip, the Honorable Nancy Pelosi, Democratic Leader, and the Honorable Steny H. Hoyer, Democratic Whip. The Democratic Leader and the Democratic Whip have declined to support the position taken by the Group on the merits of DOMA Section 3's constitutionality in this case.