Paul D. Clement (DC Bar 433215)
pclement@bancroftpllc.com
H. Christopher Bartolomucci (DC Bar 453423)
cbartolomucci@bancroftpllc.com
Nicholas J. Nelson (DC Bar 1001696)
nnelson@bancroftpllc.com
Michael H. McGinley (DC Bar 1006943)
mmcginley@bancroftpllc.com

BANCROFT PLLC
1919 M Street, N.W.
Suite 470
Washington, D.C.  20036
202-234-0090 (telephone)
202-234-2806 (facsimile)

*Of Counsel:*
Kerry W. Kircher, General Counsel (DC Bar 386816)
Kerry.Kircher@mail.house.gov
William Pittard, Deputy General Counsel (DC Bar 482949)
William.Pittard@mail.house.gov
Christine Davenport, Senior Assistant Counsel (NJ Bar 043682000)
Christine.Davenport@mail.house.gov
Todd B. Tatelman, Assistant Counsel (VA Bar 66008)
Todd.Tatelman@mail.house.gov
Mary Beth Walker, Assistant Counsel (DC Bar 501033)
MaryBeth.Walker@mail.house.gov
Eleni M. Roumel, Assistant Counsel (SC Bar 75763)
Eleni.Roumel@mail.house.gov

OFFICE OF GENERAL COUNSEL,
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C.  20515
202-225-9700 (telephone)
202-226-1360 (facsimile)

*Counsel for Intervenor-Defendant the Bipartisan
Legal Advisory Group of the U.S. House of Representatives*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### Western Division

TRACEY COOPER-HARRIS and
MAGGIE COOPER-HARRIS,

        Plaintiffs,

        v.

UNITED STATES OF AMERICA, et al.,

        Defendants,

BIPARTISAN LEGAL ADVISORY
GROUP OF THE U.S. HOUSE
OF REPRESENTATIVES,

        Intervenor-Defendant.

No. 2:12-cv-00887-CBM (AJWx)

**REPLY IN SUPPORT OF
INTERVENOR-
DEFENDANT'S CROSS
MOTION FOR SUMMARY
JUDGMENT**

Hearing: May 6, 2013
Time:  11:00 a.m.
Hon. Consuelo B. Marshall

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... iii

INTRODUCTION ...................................................................................1

ARGUMENT ..........................................................................................2

I.      Rational-Basis Review Applies. ................................................2

II.     DOMA Section 3 and Section 101 Are Rationally Related to Numerous
        Legitimate Governmental Interests. ..........................................3

        A.     Uniformity. ......................................................................3

        B.     Sovereignty and Caution. ................................................5

        C.     Preserving Past Congressional Judgments, Providing Definitional
               Clarity, and Fiscal Prudence. ..........................................6

        D.     The Rational Bases That Support States' Decisions to Adopt and
               Retain the Traditional Definition. ...................................8

        E.     Alleged "Animus" Cannot Invalidate a Statute, Such as DOMA,
               Supported by Rational Bases. .........................................10

III.    DOMA Section 3 and Section 101 Are Not Sex Discrimination. .................10

CONCLUSION ......................................................................................10

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

*Aranas v. Napolitano*,
   No. 8:12-cv-01137 (C.D. Cal.) .....................................................1, 2, 3, 5, 7, 8

*Baehr v. Lewin*,
   852 P.2d 44, 74 Haw. 645 (Haw. 1993) ........................................................6

*Bowen v. Owens*,
   476 U.S. 340, 106 S. Ct. 1881, 90 L. Ed. 2d 316 (1986) .............................7

*Diaz v. Brewer*,
   656 F.3d 1008 (9th Cir. 2011) .......................................................................2

*Hollingsworth v. Perry*,
   No. 12-144 (S. Ct.) .........................................................................................2

*Johnson v. Robison*,
   415 U.S. 361, 94 S. Ct. 1160, 39 L. Ed. 2d 389 (1974) ...............................9

*Massachusetts v. U.S. Dep't of Health & Human Servs.*,
   682 F.3d 1 (1st Cir. 2012)...............................................................................3

*Perry v. Brown*,
   671 F.3d 1052 (9th Cir. 2012) .................................................................2, 5, 8

*United States v. O'Brien*,
   391 U.S. 367, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968) .............................10

*Vill. of Belle Terre v. Boraas*,
    416 U.S. 1, 94 S. Ct. 1536, 39 L. Ed. 2d 797 (1974) ................................10

*Williamson v. Lee Optical of Okla., Inc.*,
   348 U.S. 483, 75 S. Ct. 461, 99 L. Ed. 563 (1955)  ......................................4

*Windsor v. United States*,
   699 F. 3d 169 (2d Cir. 2012) ..........................................................................3

**Statutes**

1 U.S.C. § 7 ......................................................................................1, 3, 4, 5, 6, 7

38 U.S.C. § 101 .....................................................................................1, 3, 4, 5

**INTRODUCTION**

Plaintiffs Tracey and Maggie Cooper-Harris argue that Section 3 of the Defense of Marriage Act ("DOMA"), 1 U.S.C. § 7, and 38 U.S.C. § 101(3) & (31) ("Section 101"),[1] which confirm the traditional definition of marriage for purposes of assigning federal benefits and burdens, violate equal protection principles by treating same-sex spouses differently than opposite-sex spouses. But the Supreme Court and Ninth Circuit already have foreclosed these arguments.

In *Aranas v. Napolitano*, No. 8:12-cv-1137 (C.D. Cal.) this Court recently denied the motion to dismiss of Intervenor-Defendant the Bipartisan Legal Advisory Group of the U.S. House of Representatives ("House") in an equal-protection challenge to the constitutionality of DOMA Section 3. Order Granting in Part & Denying in Part Mots. to Dismiss, *Aranas* (C.D. Cal. Apr. 19, 2013) (ECF No. 126) ("*Aranas* MTD Order"). In doing so, the Court found distinguishable Supreme Court and Ninth Circuit precedent squarely holding that the traditional definition of marriage comports with equal protection. Moreover, although the Court followed Ninth Circuit precedent insofar as it held that rational-basis review applies to sexual-orientation classifications, it took a step that no court of appeals has yet countenanced, and the First Circuit has expressly rejected, by denying the House's motion to dismiss under rational-basis review.

As the Court is aware, the Supreme Court is poised to rule on an equal protection challenge to DOMA mere weeks from now, and the Ninth Circuit has two similar cases before it, which have been stayed pending the high court's ruling. For the reasons explained herein, if the Court takes any action on the currently pending summary judgment motions prior to the Supreme Court's ruling, it should grant the House's cross-motion for summary judgment, because neither Plaintiffs nor the Executive Branch defendants offer any persuasive reasons why the House's

---

[1] For purposes of this filing, arguments made as to DOMA Section 3's constitutionality apply equally to Section 101, and vice-versa, except where otherwise specified.

Cross Motion, Intervenor-Def.'s Not. of Cross Mot. & Mot. for Summ. J. (Mar. 18, 2013) (ECF No. 105) ("Cross Motion"), should be denied. *See* Pls.' Reply in Supp. of Mot. for Summ. J. & Opp'n to [House]'s Cross Mot. for Summ. J. (Apr. 8, 2013) (ECF No. 114) ("Plaintiffs' Opposition"); Fed. Defs.' Resp. to Pls.' & [House]'s Cross Mots. for Summ. J. (Apr. 8, 2013) (ECF No. 113) ("Executive's Response"). [2]

## ARGUMENT

## I.   Rational-Basis Review Applies.

This Court recently recognized that rational-basis review applies. *Aranas* MTD Order at 11 ("The rule in the Ninth Circuit is that homosexuality is not a suspect or quasi-suspect classification requiring heightened scrutiny." (citation omitted)); *see also* Intervenor-Def.'s Reply to Fed. Defs.' Resp. at 3-9 (April 22, 2013) (filed concurrently herewith) ("Reply to Executive Branch Defendants"). Nevertheless, this Court relied on the Ninth Circuit's recent decisions in *Perry v. Brown*, 671 F.3d 1052 (9th Cir. 2012), which is currently under review by the Supreme Court,[3] and *Diaz v. Brewer*, 656 F.3d 1008 (9th Cir. 2011), to hold that "the Ninth Circuit has recently disapproved or rejected" almost all the rational bases for DOMA identified by the House. *Aranas* MTD Order at 13.

In fact, neither *Perry* nor *Diaz* addresses the particular rational bases, in context, that the House asserts to support DOMA Section 3 or Section 101. Indeed, the Ninth Circuit has not had occasion to review DOMA Section 3 or

---

[2]  In a footnote, Pls.' Opp'n at 1 n.1, Plaintiffs take issue with how the House structured its Opposition and Cross-Motion.  But the House's filings fully comport with the required page limits; the constitutional questions in the case are exceedingly complex and deserve a full-throated defense; the issues raised in both replies necessarily involve a good deal of overlap; the House's approach avoids needless redundancies and streamlines the review process for the Court; and the Court accepted this filing structure not only in this case, but in *Aranas* as well. *See* Intervenor-Def.'s Resp. to Defs.' Procedural Mot. to Dismiss & Partial Mot. to Dismiss, *Aranas* (C.D. Cal. Oct. 15, 2012) (ECF No. 58); Mem. of Intervenor-Def. the [House] in Supp. of Mot. to Dismiss, *Aranas* (C.D. Cal. Oct. 22, 2012) (ECF No. 62); Mem. of Intervenor-Def. . . . in Opp'n to Mot. for Prelim. Inj., *Aranas* (C.D. Cal. Oct. 22, 2012) (ECF No. 63).

[3]  *Hollingsworth v. Perry*, No. 12-144 (S. Ct.).

2

Section 101.  And as this Court explained in *Aranas*, both the First and Second Circuits, the only circuit courts to have considered the question of DOMA's constitutionality, have "stated that DOMA likely survives rational basis review." *Aranas* MTD Order at 13 n.8; *see also Windsor v. United States,* 699 F. 3d 169, 180 (2d Cir. 2012) ("So a party urging the absence of any rational basis takes up a heavy load. . . . [T]he law was passed by overwhelming bipartisan majorities in both houses of Congress; it has varying impact on more than a thousand federal laws; and the definition of marriage it affirms has been long-supported and encouraged."); *Massachusetts v. U.S. Dep't of Health & Human Servs*., 682 F.3d 1, 9 (1st Cir. 2012) ("Under such a rational basis standard, the . . . plaintiffs cannot prevail. . . . Congress could rationally have believed that DOMA would reduce costs . . . .").  Thus, this Court must consider *each* of House's rational bases.

## II.   DOMA Section 3 and Section 101 Are Rationally Related to Numerous Legitimate Governmental Interests.

### A.   Uniformity.

In DOMA Section 3 and Section 101, Congress rationally chose to have a uniform federal rule that treated all same-sex couples the same, without regard to whether their state of residence recognizes same-sex marriage, recognizes civil unions, or employs the traditional definition.  The Executive Branch defendants and Plaintiffs suggest that Congress should have selected a different kind of uniformity – namely, a uniform rule of deference to the states' varying definitions of marriage.[4]  Pls.' Opp'n at 13-15; Exec.'s Resp. at 29-30.  But if uniformity is a legitimate government interest (as the opponents do not dispute), then what *kind* of uniformity to pursue is a choice for Congress, not the courts.  When Congress could no longer obtain substantive uniformity by applying a uniform procedural

---

[4]  It is not true that Congress has always deferred to the states on marriage, *see* Mem. of P. & A. in Supp. of Cross Mot. of Intervenor-Def. for Summ. J. at 8-11 (Mar. 18, 2013) (ECF No. 105-2) ("House Memorandum"), and neither the Plaintiffs nor the Executive Branch defendants seriously argue otherwise.  *See, e.g.*, Pls.' Opp'n at 13-16; Exec.'s Resp. at 29.

3

1  rule of deference, there was nothing irrational about deciding that substantive

2  uniformity was more important.  After all, Congress also has a rational interest in

3  avoiding the difficult residency and choice-of-law determinations that federal

4  agencies would have needed to make absent DOMA Section 3 and Section 101,

5  particularly in the context of the administration of veterans' benefits.  Surely it is

6  rational for Congress to employ a rule that avoids the need for federal agencies to

7  make state-law determinations.

8      Plaintiffs and the Executive Branch defendants claim it is irrational for

9  Congress to seek national uniformity in federal recognition of same-sex marriages,

10  because it has not sought national uniformity in federal recognition of, *e.g.*, first-

11  cousin marriages, common-law marriages, or teenage marriages.  Pls.' Opp'n at

12  13-14; Exec.'s Resp. at 29-30.  But rational-basis review, as it must, leaves the

13  legislature ample room to "select one phase of one field and apply a remedy there,"

14  particularly if it is "the phase of the problem which seems most acute to the

15  legislative mind."  *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489, 75

16  S. Ct. 461, 99 L. Ed. 563 (1955).  And a rule requiring the federal government to

17  adopt state definitions in all instances would be antithetical to both rational-basis

18  review and notions of cooperative federalism.  Congress may pursue a rational

19  interest in uniformity by, for example, providing a uniform federal statute of

20  limitation for a federal cause of action.  Doing so for one statute does not somehow

21  prevent Congress from borrowing the state statute of limitations for a different

22  statute.  Certainly, there were rational reasons for Congress to place greater weight

23  on uniformity when it comes to same-sex marriage than first-cousin marriages, as

24  evidenced by the much more robust political debate regarding the former.[5]

25      [5]  None of this is to suggest that it would have been irrational for Congress to choose
26  Plaintiffs' preferred uniform rule of deference.  But rational-basis review means having choices,
    and Congress surely had discretion to choose between these two forms of uniformity – certainly
27  Plaintiffs would not take issue with the notion that this uniformity interest could rationally
    support a decision of a future Congress to adopt a uniform federal definition that includes all
28  same-sex couples, if a majority of states move away from the traditional definition.

4

1    In *Aranas*, this Court suggested that DOMA Section 3 does not further the

2    goal of uniformity because it is so broadly applicable.  *Aranas* MTD Order at 14.

3    While the House strongly disagrees with this conclusion, even were it correct, the

4    same rationale cannot be applied to Section 101.  Unlike DOMA Section 3, Section

5    101 applies to only one title of the U.S. Code.  Moreover, it accounts for the

6    particular difficulties in assessing residency in the military context, where military

7    members often move frequently from state to state.

8         **B.    Sovereignty and Caution.**

9         In enacting DOMA, Congress ensured that the federal government and every

10   state would have the right to define marriage for itself, and that no jurisdiction

11   would be forced to recognize same-sex marriage just because another jurisdiction

12   (or courts interpreting a distinct state constitution) did so.  And in retaining the

13   traditional definition of marriage for purposes of federal law only, Congress

14   exercised the same sovereign prerogative that it preserved for every state.  It

15   rationally decided to clarify that the traditional definition would continue to apply

16   as the uniform federal definition, and thereby proceeded cautiously at the federal

17   level while allowing any state to chart its own course within its own borders

18   without dictating the outcome for other sovereigns.  In short, DOMA Section 3

19   (and Section 101) allowed each state to operate as a laboratory of democracy,

20   while preserving the ability of each sovereign to make this sensitive determination

21   for purposes of that sovereign's own law.  The Ninth Circuit did not and could not

22   have rejected any such sovereignty concerns in *Perry*, because one state's

23   decisions about how to define marriage do not present any such concerns.[6]

24        Plaintiffs appear to agree that states, as sovereigns, should be allowed to

25

26        [6]  The *Perry* court also rejected a "caution" rationale for Proposition 8, but its primary
     reason for doing so was unique to Proposition 8 – the fact that California had *already* issued
27   marriage certificates to many thousands of same-sex couples *before* taking this purportedly
     cautionary step.  671 F.3d at 1089.  Because there plainly is no analogous objection to DOMA,
28   *Perry* is inapposite on this point as well.

define marriage.  *See* Pls.' Opp'n at 14.  Tellingly, Plaintiffs do not explain how it was irrational for Congress to respect state sovereignty (by allowing every state to define marriage for itself) and also to exercise its own sovereign power (by employing the traditional definition to determine eligibility for federal programs and benefits).  For their part, the Executive Branch defendants concede that "the federal government possesses the authority to set the terms of its own benefits and obligations," Exec.'s Resp. at 29, but both they and Plaintiffs suggest that Congress was not cautious because DOMA does not defer to states on recognizing marital status.  *See* Pls.' Opp'n at 18; Exec.'s Resp. at 29. [7]  Those responses ignore the unique dynamic facing Congress when it enacted DOMA.  Up until that point, the traditional definition had governed in every state and for all federal law purposes.  Thus, DOMA maintained the relevant status quo ante, and was indeed an appropriately cautious response to the onset of state experimentation with redefining marriage.  *See Baehr v. Lewin*, 852 P.2d 44, 74 Haw. 645 (Haw. 1993).

## C.    Preserving Past Congressional Judgments, Providing Definitional Clarity, and Fiscal Prudence.

Every federal statute on the books in 1996 (including Section 101) reflected a congressional intent – either implicit or express – to use terms like "marriage" and "spouse" to refer only to opposite-sex couples.  Congress knew to a certainty that the various legislative judgments and compromises reflected in that array of statutory provisions were based on the traditional definition.  It was thus eminently rational to preserve those past judgments.  Plaintiffs somewhat incredibly claim that DOMA Section 3 and Section 101 do not "preserve the 'legislative judgments' of prior Congresses."  Pls.' Opp'n at 17.  They argue that DOMA Section 3 uniquely lacks a rational basis even though it adopted not just *a* uniform federal

---

[7]  The Executive Branch defendants do not challenge the constitutionality of DOMA Section 3 or Section 101 under traditional rational-basis review.  *See* Exec.'s Resp. at 34.  Their discussions of various interests supporting DOMA are premised on the applicability of heightened scrutiny, and thus have little relevance given that rational basis applies in this Circuit.

definition, but *the precise definition* that underlay every prior congressional reference to marriage.  Thus, DOMA Section 3 is supported by the same rational basis that justifies any definitional provision in the U.S. Code:  It rationally clarifies the meaning of the defined term.

Congress likewise was rationally concerned with avoiding the uncertain and likely negative fiscal impact of redefining marriage.  Indeed, whatever the ultimate net impact of DOMA Section 3 on the overall federal budget, Congress could rationally choose to avoid the disparate impact on various federal programs, some of which benefit married couples (and therefore would face a budget shortfall if the definition were broadened) and some which involve the opposite dynamic.

The Ninth Circuit has not addressed the congressional-judgments or definitional-clarity rationales.  This Court in *Aranas* relied on *Diaz* as rejecting the fiscal-prudence rationale.  *Aranas* MTD Order at 13.  However *Diaz* simply does not address the House's argument here.  Rather, in *Diaz*, the court addressed a situation where the government *withdraws* benefits that it previously offered to a class of people, saving money alone may not justify the deprivation.  *See* 656 F.3d at 1010 ("In April of 2008, the State of Arizona . . . offer[ed] access to healthcare benefits for qualified . . . same-sex domestic partners of state employees . . . .  On September 4, 2009, [Arizona] eliminate[d] coverage for domestic partners" but Arizona law prohibited same-sex couples from preserving their benefits by marrying).  Here, by contrast, the question is whether Congress can decline to *extend* benefits.  Indeed, where, as with DOMA Section 3 and Section 101, Congress declines to extend benefits to those not previously eligible, the Supreme Court has recognized that this is justified by the government interest in proceeding "cautiously" and protecting the fisc.  *See Bowen v. Owens*, 476 U.S. 340, 347, 348, 106 S. Ct. 1881, 90 L. Ed. 2d 316 (1986) ("A constitutional rule that would invalidate Congress' attempts to proceed cautiously in awarding increased benefits might deter Congress from making any increases at all.  The Due Process Clause

1  does not impose any such constitutional straitjacket." (citation and quotation marks

2  omitted)).

**D.    The Rational Bases That Support States' Decisions to Adopt and Retain the Traditional Definition.**

5          The federal government thus has uniquely federal interests that provide a

6  rational basis for DOMA Section 3 and Section 101.  But by incorporating the

7  definition long used by every state and still employed by the vast majority of

8  states, DOMA is likewise supported by all the reasons the states adopted and

9  retained the traditional definition.  In other words, as long as the vast majority of

10 states have not adopted a wholly irrational and unconstitutional definition,

11 Congress acted rationally in clarifying that federal law reflects the same definition.

12 There is no dispute that, unlike opposite-sex relationships, same-sex relationships

13 do not have a propensity to produce children without advance planning, House

14 Mem. at 18, 19, or that marriage creates a beneficial social structure for

15 responsible procreation and childrearing.  Those concessions are enough to give

16 Congress a rational basis to treat same-sex and opposite-couples differently.

17         This Court in *Aranas* stated that the Ninth Circuit rejected this rationale in

18 *Perry*.  *Aranas* MTD Order at 13.  But by its express terms, the *Perry* holding

19 cannot possibly apply to this case.  The Ninth Circuit made crystal clear that it was

20 *not* considering whether differing procreational capacities could support a

21 "decision[] not to *add* to a legislative scheme a group that is unnecessary to the

22 purposes of that scheme;" instead, it noted that "Proposition 8 *subtracted* a

23 disfavored group from a scheme of which it already was a part," and that the

24 inquiry in those circumstances was different.  *Perry*, 671 F.3d at 1087.  In *Perry*,

25 therefore, the question was not whether there was "no need to provide [marital

26 designation to same-sex couples] in the first place; instead," it was whether there

27 was "some legitimate reason for the act of taking it away."  *Id.* at 1088.  In DOMA,

28 however, Congress plainly was deciding "not to *add*" same-sex couples to federal

8

marital eligibility that they had not enjoyed before. [8]  This, of course, is what every state that has defined marriage along traditional lines also did – so if the Ninth Circuit's *Perry* holding means that DOMA is irrational, then it means that every state traditional-marriage definition is irrational.  But it is beyond plain that the Ninth Circuit was going out of its way to avoid exactly that result.  Because this Court's translation of the *Perry* holding to DOMA does not include any such limit, the *Aranas* holding is not an appropriate basis for a final reviewable judgment until the Supreme Court or Ninth Circuit have further spoken on these matters.

DOMA's opponents offer additional arguments that fundamentally misunderstand the deferential nature of rational-basis review.  Plaintiffs challenge as irrational the long-held cultural judgment that a child's biological parents are, other things equal, the child's natural and most suitable guardians.  *See* Pls.' Opp'n at 21.  Plaintiffs even claim that current law does not recognize this principle – and that doing so would be unconstitutional discrimination based on the circumstances of a child's birth.  *Id.* at 22.  That is mistaken:  Every state recognizes that a child ordinarily should be raised by his or her biological mother and father, if they are able and willing.  To be sure, children can be raised by their unmarried biological parents and married couples often raise children without a biological link.  But none of that denies that marriage as an institution is linked to the unique tendency of opposite-sex couples to produce unintended offspring and the societal interest in providing a stable structure for raising such children.  It is not irrational to decline to extend it to same-sex couples who by definition do not have the same propensity for their intimate acts to produce unplanned offspring.

---

[8]  Plaintiffs and Executive Branch defendants also miss this crucial distinction in arguing that DOMA Section 3 and Section 101 have no effect on procreation or childrearing by opposite-sex couples.  *See* Pls.' Opp'n at 19-24; Exec.'s Resp. at 24-26.  Where, as here, there has been no *Perry*-style withdrawal of benefits, what must have a rational basis is not the denial of benefits in the abstract, but the *difference* in treatment between same-sex and opposite-sex couples.  Thus, the fact that opposite-sex couples implicate the state interests in procreation and childrearing in a unique way and to a unique degree is a rational basis for treating them differently.  *E.g., Johnson v. Robison*, 415 U.S. 361, 383, 94 S. Ct. 1160, 39 L. Ed. 2d 389 (1974).

1    Moreover, although Plaintiffs concede that "rational[ity] review does not

2    require legislative classifications to be narrowly tailored," Pls. Opp'n at 24, they

3    still suggest that DOMA Section 3 and Section 101 are too broad. *See id.*  At most,

4    then, all that Plaintiffs have demonstrated is that definitions of marriage eligibility

5    (as with most definitions) involve a line-drawing process in which "every line

6    drawn by a legislature leaves some out that might well have been included." *Vill.*

7    *of Belle Terre v. Boraas*, 416 U.S. 1, 8, 94 S. Ct. 1536, 39 L. Ed. 2d 797 (1974).

8         **E.    Alleged "Animus" Cannot Invalidate a Statute, Such as DOMA,**

9              **Supported by Rational Bases.**

10    Plaintiffs allege that DOMA was based on animus.  Pls.' Opp'n at 25.

11    However, "[i]t is a familiar principle of constitutional law that [the courts] will not

12    strike down an otherwise constitutional statute on the basis of an alleged illicit

13    legislative motive."  *United States v. O'Brien*, 391 U.S. 367, 383, 88 S. Ct. 1673,

14    20 L. Ed. 2d 672 (1968).  Thus, while the Supreme Court has long recognized that

15    discrimination purely for its own sake is not rational, under the established

16    approach, constitutional review does not require a separate judicial inquiry into

17    whether a law was motivated by "animus" of some of the individuals legislators

18    who voted for DOMA Section 3.[9]  Instead, only *after* the search for other rational

19    bases for a law has been exhausted will the Court conclude that impermissible

20    animus is the sole remaining explanation.  Animus is thus a conclusion drawn from

21    the unsuccessful search for rational bases, not a separate inquiry.

22    **III.   DOMA Section 3 and Section 101 Are Not Sex Discrimination.**

23    Plaintiffs have no persuasive arguments that DOMA Section 3 and Section

24    101 are sex discrimination.  *See* Reply to Exec. Br. Defs. at 10.

25                              **CONCLUSION**

26    The Court should grant the House's Cross Motion for Summary Judgment.

27    ───────────────────

28    [9]  Plaintiffs previously conceded that "animus" did not motivate the vote on Section 101. *See* Mem. of P. & A. in Supp. of Pls.' Mot. for Summ. J. at 6-7, 24 (Mar. 4, 2013) (ECF No. 97).

Respectfully submitted,

By: */s/ H. Christopher Bartolomucci*
H. Christopher Bartolomucci
BANCROFT PLLC[10]

*Counsel for Intervenor-Defendant the*
*Bipartisan Legal Advisory Group of the U.S.*
*House of Representatives*[11]

April 22, 2013

---

[10]   Kerry W. Kircher, as ECF filer of this document, attests that concurrence in the filing of the document has been obtained from signatory H. Christopher Bartolomucci.

[11]   The Bipartisan Legal Advisory Group, which speaks for the House in litigation matters, currently is comprised of the Honorable John A. Boehner, Speaker of the House, the Honorable Eric Cantor, Majority Leader, the Honorable Kevin McCarthy, Majority Whip, the Honorable Nancy Pelosi, Democratic Leader, and the Honorable Steny H. Hoyer, Democratic Whip.  The Democratic Leader and Democratic Whip decline to support the filing of this reply.

## CERTIFICATE OF SERVICE

I certify that on April 22, 2013, I electronically filed the foregoing Reply In
Support of Intervenor-Defendant's Cross Motion for Summary Judgment with the
Clerk of Court by using the CM/ECF system, which provided an electronic notice
and electronic link of the same to the following attorneys of record through the
Court's CM/ECF system:

Caren E. Short, Esquire
Christine P. Sun, Esquire
Joseph J. Levin, Jr., Esquire
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, Alabama  36104
caren.short@splcenter.org
christine.sun@splcenter.org
joe.levin@splcenter.org
*Counsel for Plaintiffs*

Adam P. Romero, Esquire
Rubina Ali, Esquire
WILMER CUTLER PICKERING HALE & DORR LLP
7 World Trade Center
250 Greenwich Street
New York City, New York  10007
adam.romero@wilmerhale.com
rubina.ali@wilmerhale.com
*Counsel for Plaintiffs*

Eugene Marder, Esquire
WILMER CUTLER PICKERING HALE & DORR LLP
950 Page Mill Road
Palo Alto, California  94304
eugene.marder@wilmerhale.com
*Counsel for Plaintiffs*

Randall R. Lee, Esquire
Matthew D. Benedetto, Esquire
WILMER CUTLER PICKERING HALE & DORR LLP
350 South Grand Avenue Suite 2100
Los Angeles, California  90071
randall.lee@wilmerhale.com
matthew.benedetto@wilmerhale.com
*Counsel for Plaintiffs*

Jean Lin, Senior Trial Counsel
U.S. DEPARTMENT OF JUSTICE
Civil Division - Federal Programs Branch
20 Massachusetts Avenue, Northwest
Washington, District of Columbia  20530
jean.lin@usdoj.gov
*Counsel for Executive Branch Defendants*


                                    */s/ Kerry W. Kircher*
                                    Kerry W. Kircher