Paul D. Clement (DC Bar 433215)
pclement@bancroftpllc.com
H. Christopher Bartolomucci (DC Bar 453423)
cbartolomucci@bancroftpllc.com
Nicholas J. Nelson (DC Bar 1001696)
nnelson@bancroftpllc.com
Michael H. McGinley (DC Bar 1006943)
mmcginley@bancroftpllc.com

BANCROFT PLLC
1919 M Street, N.W.
Suite 470
Washington, D.C.  20036
202-234-0090 (telephone)
202-234-2806 (facsimile)

*Of Counsel:*
Kerry W. Kircher, General Counsel (DC Bar 386816)
Kerry.Kircher@mail.house.gov
William Pittard, Deputy General Counsel (DC Bar 482949)
William.Pittard@mail.house.gov
Christine Davenport, Senior Assistant Counsel (NJ Bar 043682000)
Christine.Davenport@mail.house.gov
Todd B. Tatelman, Assistant Counsel (VA Bar 66008)
Todd.Tatelman@mail.house.gov
Mary Beth Walker, Assistant Counsel (DC Bar 501033)
MaryBeth.Walker@mail.house.gov
Eleni M. Roumel, Assistant Counsel (SC Bar 75763)
Eleni.Roumel@mail.house.gov

OFFICE OF GENERAL COUNSEL,
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C.  20515
202-225-9700 (telephone)
202-226-1360 (facsimile)

*Counsel for Intervenor-Defendant the Bipartisan
Legal Advisory Group of the U.S. House of Representatives*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### Western Division

| | |
|---|---|
| TRACEY COOPER-HARRIS and MAGGIE COOPER-HARRIS, | No. 2:12-cv-00887-CBM (AJWx) |
| Plaintiffs, | **INTERVENOR-DEFENDANT'S REPLY TO FEDERAL DEFENDANTS' RESPONSE TO CROSS MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| UNITED STATES OF AMERICA, et al., | |
| Defendants, | |
| BIPARTISAN LEGAL ADVISORY GROUP OF THE U.S. HOUSE OF REPRESENTATIVES, | Hearing: May 6, 2013 Time:  11:00 a.m. Hon. Consuelo B. Marshall |
| Intervenor-Defendant. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION .................................................................................... 1

ARGUMENT ............................................................................................ 2

I.      The Executive Branch Defendants Are Correct That Plaintiffs Lack Standing. .......................................................................................... 2

II.     Supreme Court and Ninth Circuit Precedent Foreclose Plaintiffs' Equal Protection Challenges. .................................................................. 3

    A.    *Baker* and *Adams* Control. ................................................................... 3

        1.    *Baker v. Nelson*, 409 U.S. 810, 93 S. Ct. 37, 34 L. Ed. 2d 65 (1972). ........................................................................................... 3

        2.    *Adams v. Howerton*, 673 F.2d 1036 (9th Cir. 1982)................... 7

    B.    Ninth Circuit Caselaw Forecloses Any Application of Heightened Scrutiny. ............................................................................................... 9

III.    DOMA and Section 101 are Rationally Related to Numerous Legitimate Governmental Interests........................................................................... 10

IV.    DOMA Section 3 and Section 101 Do Not Discriminate on the Basis of Sex. ........................................................................................................ 10

V.    The Definition of Marriage Should Be Left to the Democratic Process........ 10

CONCLUSION ........................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Howerton,*
    673 F.2d 1036 (9th Cir. 1982) ...................................................... 7-9

*Adarand Constructors, Inc. v. Pena,*
    515 U.S. 200, 115 S. Ct. 2097, 132 L. Ed. 2d 158 (1995) .............................5

*Aranas v. Napolitano,*
    No. 12-1137 (C.D. Cal.) ...........................................1, 3, 6, 8. 9, 10

*Baker v. Nelson,*
    409 U.S. 810, 93 S. Ct. 37, 34 L. Ed .2d 65 (1972) ................................ 3-7

*City of Cleburne v. Cleburne Living Ctr.,*
    473 U.S. 432, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985) ...........................9, 10

*Davis v. Passman,*
    442 U.S. 228, 199 S. Ct. 2264, 60 L. Ed. 2d 846 (1979) ..............................2

*Diaz v. Brewer,*
    656 F.3d 1008 (9th Cir. 2011) .......................................................10

*Hicks v. Miranda,*
    422 U.S. 332, 95 S. Ct. 2281, 45 L. Ed. 2d 223 (1975) ...............................6

*Lawrence v. Texas,*
    539 U.S. 558, 123 S. Ct. 2472, 156 L. Ed. 2d 508 (2003) ..................6, 8, 11

*Lui v. Holder,*
    No. 2:11-cv-01267 (C.D. Cal.) ......................................................9

*Lyng v. Castillo,*
    477 U.S. 635, 106 S. Ct. 2727, 91 L. Ed. 2d 527 (1986) ............................10

*Mass. Bd. of Ret. v. Murgia,*
    427 U.S. 307, 96 S. Ct. 2562, 49 L. Ed. 2d 520 (1976) ..............................10

*Massachusetts v. HHS,*
    682 F.3d 1 (1st Cir. 2012)...........................................................3

*Murray v. Cable Nat'l Broad. Co.,*
    86 F.3d 858 (9th Cir. 1996) .........................................................9

*Palmer v. Sanderson,*
    9 F.3d 1433 (9th Cir. 1993) .........................................................9

*Perry v. Brown,*
    671 F.3d 1052 (9th Cir. 2012) ....................................................7, 10

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.,*
    490 U.S. 477, 109 S. Ct. 1917, 104 L. Ed. 2d 526 (1989) .............................6

iii

*Romer v. Evans*,
    517 U.S. 620, 116 S. Ct. 1620, 134 L. Ed. 2d 855 (1996) ...........................10

*San Antonio Indep. Sch. Dist. v. Rodriguez*,
    411 U.S. 1, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973) ......................................10

*Smelt v. Cnty. of Orange*,
    No. 8:04-cv-01042 (C.D. Cal.) ......................................................................7

*Smelt v. United States*,
    No. 8:09-cv-00286 (C.D. Cal.) ......................................................................7

*Twentieth Century Fox Film Corp. v. Entm't Distrib.*,
    429 F.3d 869 (9th Cir. 2005) .........................................................................9

*United States v. Doe*,
    324 F.3d 1057 (9th Cir. 2003) .......................................................................9

*United States v. Windsor*,
    No. 12-307 (U.S. 2013) ...........................................................................10, 11

*Wilson v. Ake*,
    No. 8:04-cv-01680 (M.D. Fla.).......................................................................7

*Windsor v. United States*,
    699 F.3d 169 (2d Cir. 2012) ..........................................................................4

*Witt v. Dep't of Air Force*,
    527 F.3d 806 (9th Cir. 2008) .........................................................................9


**Statutes**

1 U.S.C. § 7 ....................................................................................................1

38 U.S.C. § 101 ..............................................................................................1

iv

**INTRODUCTION**

Plaintiffs Tracey and Maggie Cooper-Harris argue that Section 3 of the Defense of Marriage Act ("DOMA"), 1 U.S.C. § 7, and 38 U.S.C. § 101(3) & (31) ("Section 101"),[1] which confirm the traditional definition of marriage for purposes of assigning federal benefits and burdens, violate equal protection principles by treating same-sex spouses differently than opposite-sex spouses. But the Supreme Court and Ninth Circuit already have foreclosed these arguments.

In *Aranas v. Napolitano*, No. 8:12-cv-1137 (C.D. Cal.), this Court recently denied the motion to dismiss of Intervenor-Defendant the Bipartisan Legal Advisory Group of the U.S. House of Representatives' ("House") in an equal-protection challenge to the constitutionality of DOMA Section 3. Order Granting in Part & Denying in Part Mots. to Dismiss, *Aranas* (C.D. Cal. Apr. 19, 2013) (ECF No. 126) ("*Aranas* MTD Order"). In doing so, the Court found distinguishable Supreme Court and Ninth Circuit precedent squarely holding that the traditional definition of marriage comports with equal protection. Moreover, although the Court followed Ninth Circuit precedent insofar as it held that rational-basis review applies to sexual-orientation classifications, it took a step that no court of appeals has yet countenanced, and the First Circuit has expressly rejected, by denying the House's motion to dismiss under rational-basis review.

As the Court is aware, the Supreme Court is poised to rule on an equal protection challenge to DOMA mere weeks from now, and the Ninth Circuit has two similar cases before it, which have been stayed pending the high court's ruling. For the reasons explained herein, if the Court takes any action on the currently pending summary judgment motions prior to the Supreme Court's ruling, it should grant the House's cross-motion for summary judgment, because neither Plaintiffs nor the Executive Branch defendants offer any persuasive reasons why the House's

---

[1] For purposes of this filing, arguments made as to DOMA Section 3's constitutionality apply equally to Section 101, and vice-versa, except where otherwise specified.

1

Cross Motion, Intervenor-Def.'s Not. of Cross Mot. & Mot. for Summ. J. (Mar. 18, 2013) (ECF No. 105) ("Cross Motion"), should be denied. *See* Pls.' Reply in Supp. of Mot. for Summ. J. & Opp'n to [House]'s Cross Mot. for Summ. J. (Apr. 8, 2013) (ECF No. 114) ("Plaintiffs' Opposition"); Fed. Defs.' Resp. to Pls.' & [House]'s Cross Mots. for Summ. J. (Apr. 8, 2013) (ECF No. 113) ("Executive's Response").

## ARGUMENT

### I.   The Executive Branch Defendants Are Correct That Plaintiffs Lack Standing.

As the Executive Branch defendants have explained, Plaintiffs lack standing to bring this case, and consequently it is not properly before this Court.  A plaintiff may only seek redress through the courts provided that, among other things, the court has proper jurisdiction over the claims and the court may make available the relief requested.  *Davis v. Passman*, 442 U.S. 228, 239 n.18, 199 S. Ct. 2264, 60 L. Ed. 2d 846 (1979).  Here, Plaintiffs have failed once again to identify why this court has statutory subject-matter jurisdiction in light of the Veterans' Judicial Review Act, Pub. L. No. 100-687, 102 Stat. 4105 (1988), which establishes suits in the Veterans Courts to be the exclusive vehicle in which veterans may pursue benefits claims, including those involving constitutional challenges.  Also lacking is any specific request for relief – apart from an insistence that DOMA Section 3 and Section 101 are unconstitutional.

Plaintiffs' omission of basic pleading requirements cannot be papered over or somehow excused.  Rather, the absence of jurisdiction or a clear remedy goes to the core question of Plaintiffs' standing and casts doubt on Plaintiffs' sole claim of Article III injury – the denial of Tracey Cooper-Harris's claim for additional dependency compensation.  If Plaintiffs cannot say under what statutory theory they are in *this* Court (as opposed to the administrative court established by Congress) and are not seeking from this Court an injunction or some other identifiable relief, *see* Opp'n of [House] to Pls.' Mot. for Summ. J. at 3 (Mar. 18,

2

2013) (ECF No. 108) ("House Opposition"), then Plaintiffs are asking this Court to issue an advisory opinion – which of course it has no authority to do. *See C. & S. Airlines v. Waterman S.S., Corp.*, 333 U.S. 103, 113, 68 S. Ct. 431, 92 L. Ed. 2d 568 (1948); *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 654 (9th Cir. 2002) ("The standing doctrine aids the federal judiciary to avoid intruding impermissibly upon the powers vested in the executive and legislative branches, by preventing courts from issuing advisory opinions not founded upon the facts of a controversy between truly adverse parties."); *Walker v. City of Lompoc*, 42 F.3d 1404 (9th Cir. 1994).

## II.  Supreme Court and Ninth Circuit Precedent Foreclose Plaintiffs' Equal Protection Challenges.

### A.  *Baker* and *Adams* Control.

#### 1.  *Baker v. Nelson*, 409 U.S. 810, 93 S. Ct. 37, 34 L.Ed.2d 65 (1972).

In its *Aranas* order, the Court relied on decisions of the First and Second Circuits to conclude that "*Baker* does not foreclose consideration of this equal protection challenge to DOMA." *Aranas* MTD Order at 9. But the Court's reliance on the First Circuit decision in particular is untenable, given the remainder of the analysis in the Court's *Aranas* opinion. In its *Massachusetts v. HHS* decision, the First Circuit did not simply dismiss *Baker* as irrelevant to DOMA Section 3. Quite the contrary, the First Circuit expressly recognized that *Baker* remains binding on the lower courts, and that *Baker*'s holding that states are not required to recognize same-sex relationships as marriages "limit[s] the arguments [against DOMA] to ones that do not presume or rest on a constitutional right to same-sex marriage" under state law. 682 F.3d 1, 8 (1st Cir. 2012). Consistent with the Supreme Court's repeated admonition that equal protection principles are exactly the same as applied to the state and federal governments, the First Circuit further recognized that, just as the traditional definition of marriage satisfies rational-basis review when used by the states, so too it is rational when used by the

1    federal government.  *See id.* at 9.  In order to reconcile its view of the binding

2    nature of *Baker* with its holding that DOMA Section 3 is unconstitutional, then, the

3    First Circuit had to announce another highly unusual holding:  That, due to the

4    states' inherent sovereignty rights, traditional marriage provisions are subject to a

5    *different* (and higher) level of equal protection scrutiny when enacted by Congress

6    than when they are enacted by the states.  *Id.* at 12-13.  Without this conclusion,

7    under the First Circuit's reasoning, *Baker* in fact would foreclose challenges to

8    DOMA Section 3.

9         The problem with this, of course, is that this Court's *Aranas* opinion did not

10   rely on the states' sovereign prerogatives – nor would it have been appropriate to

11   do so, given the complete lack of precedent for the notion that states get to define

12   which classes of people are similarly situated for federal equal-protection purposes.

13   But, as noted, without that missing piece, the First Circuit's decision argues for,

14   rather than against, *Baker*'s controlling nature here.  By contrast, the Second

15   Circuit in *Windsor v. United States* suggested that *Baker* no longer has any

16   precedential force at all, at least as is relevant to DOMA.  699 F.3d 169, 178-79

17   (2d Cir. 2012).  In other words, if this Court is unwilling (as it should be) to sign

18   on to the First Circuit's unusually aggressive posture on states' reserved powers,

19   then it is left to navigate directly conflicting views of the Courts of Appeals on

20   *Baker*'s applicability to this case.  Where the Supreme Court is likely to untie this

21   Gordian knot in the immediate future, the Court's approach of denying a motion to

22   dismiss in *Aranas* is one thing.  But if the Court is to grant summary judgment one

23   way or the other in this case – which it need not do if it finds it more appropriate to

24   await guidance from the higher courts – then the correct approach here is even

25   more obvious.  It makes no sense for this Court to encapsulate a conclusion that a

26   Supreme Court decision has been *implicitly* overruled, when the Supreme Court

27   will in all likelihood be answering that question itself in a very few weeks.  Rather,

28   if any ruling is to be entered during this interim period, the proper course plainly is

4

to follow the rule that equal protection applies to states and Congress the same way, and to apply *Baker* to uphold DOMA Section 3.

Plaintiffs follow the Second Circuit's *Windsor* decision in asserting that *Baker* does not control this case because they, unlike Baker, claim already to be married under state law and to be seeking *federal* recognition of their relationship as a marriage.  Pls.' Opp'n at 3.  But as the House has explained, because the equal-protection inquiry under the Fifth Amendment is "precisely the same" as that applicable to state action under the Fourteenth Amendment, *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 217, 115 S. Ct. 2097, 132 L. Ed. 2d 158 (1995), *Baker* controls unless some independent rule compels the federal government to recognize a same-sex relationship as a marriage once the relevant state has done so.  Plaintiff offers little express argument for such a rule, and for good reason: Not only would it turn our federal system upside down and literally introduce a new chapter regarding "reverse preemption" into the annals of federalism by permitting states to define the meaning of words in federal statutes, it also would be utterly unworkable.  If such a rule were interpreted leniently, Congress would remain free to define whatever categories of family relationships it wished so long as it simply avoided labeling those categories with traditional family-law terms such as "marriage."  On the other hand, if interpreted strictly, such a rule would require an impossibly slippery judicial inquiry into whether the substance of any given federally-defined relationship crossed the line into the area of family law marked "states only," so that regardless of what Congress denominated it or intended in this regard, it would be supplanted by a patchwork of 50 varying state-law definitions.  Instead, because states do not have the constitutional power to dictate to Congress the meaning of terms that appear in federal statutes – including the terms "marriage" and "spouse" – *Baker* must control whether the federal government is required to recognize same-sex marriages.

Plaintiffs' final suggestion that *Baker* may have been deprived of its binding

force by subsequent legal developments, *see* Pls.' Opp'n at 3-4, is similarly incorrect.  The House is aware of no instance in which the Supreme Court has approved a lower court sidestepping one of the Supreme Court's precedents – whether a summary disposition or otherwise – on this basis.  *Cf. Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484, 190 S. Ct. 1917, 104 L. Ed. 2d 526 (1989).  And in the context of same-sex marriage, in *Lawrence v. Texas*, 539 U.S. 558, 578, 123 S. Ct. 2472, 156 L. Ed. 2d 508 (2003), the Supreme Court expressly *disclaimed* any ruling on "whether the government must give formal recognition to any relationship that homosexual persons seek to enter." *Id.*; *cf. id.* at 585 (O'Connor, J., concurring) ("preserving the traditional institution of marriage" *is* a legitimate state interest).  Clearly, therefore, the Supreme Court itself does not regard the unconstitutionality of traditional-marriage statutes to have been superseded by intervening doctrinal developments since *Baker*.  In short, "the lower courts are bound by summary decisions by [the Supreme] Court until such time as the Court informs them that they are not," *Hicks v. Miranda*, 422 U.S. 332, 344-45, 95 S. Ct. 2281, 45 L. Ed. 2d 223 (1975) (internal quotation marks and parentheses omitted), and the Supreme Court pointedly has refrained from contradicting the decision in *Baker*.  Accordingly, *Baker* is controlling here.[2]

The Executive Branch defendants' suggestion that *Baker* is not binding on this Court is wrong for all of the reasons that Plaintiffs' disregard is wrong.  *See* Exec.'s Resp. at 6.  The Executive Branch defendants' disregard is particularly surprising in light of, and is belied by, their recent acknowledgments (including in this District) that *Baker* "is binding" on DOMA Section 3 and similar claims, and

---

[2]  As this Court recognized in its *Aranas* MTD Order, the Ninth Circuit has not spoken on the continuing vitality of *Baker*.  *Aranas* MTD Order at 9.  Plaintiffs' claim that *Perry v. Brown*, 671 F.3d 1052 (9th Cir. 2012), "rendered *Baker* inapposite," Pls.' Opp'n at 3, therefore fails.  The *Perry* court concluded that *Baker* was not pertinent to a "wholly different question:  whether the people of a state may by plebiscite strip a group of a right or benefit, constitutional or otherwise, that they had previously enjoyed on terms of equality with all others."  *Perry*, 671 F.3d at 1082 n.14.  That question is not presented in this case, as same-sex couples never have been eligible for federal marital benefits.

"definitively establishes that the federal government may incorporate the traditional opposite-sex definition of marriage for purposes of federal statutes." [Exec. Branch's] Mem. of P. & A. in Supp. [of Mot. to Dismiss] at 28, 29 n.10, *Smelt v. United States*, No. 8:09-cv-00286 (C.D. Cal. June 11, 2009) (ECF No. 25); Mem. in Supp. of [Exec. Branch]'s Mot. to Dismiss at 6, *Wilson v. Ake*, No. 8:04-cv-01680 (M.D. Fla. Sept. 30, 2004) (ECF No. 39); *see also* Def.-Intervenor [Exec. Branch's] Mem. of P. & A. in Supp. [of Mot. to Dismiss] at 10, *Smelt v. Cnty. of Orange*, No. 8:04-cv-01042 (C.D. Cal. Dec. 6, 2004) (ECF No. 91), attached hereto as Exhibits A, B, & C, respectively.

### 2.   *Adams v. Howerton*, 673 F.2d 1036 (9th Cir. 1982).

*Adams* also establishes definitively that DOMA Section 3 – and Section 101 by extension – do not violate equal protection.  *See* Mem. of P. & A. in Supp. of Cross-Mot. of [House] for Summ. J. at 5 (Mar. 18, 2013) (ECF No. 105-2); House Opp'n at 15-17.  Here again, while the Court's *Aranas* opinion allows a higher tribunal to pass on the *Adams* question before this Court enters final judgment, the Court's actual discussion of *Adams* does not address the equal-protection implications of that decision.  Therefore, if the Court is to enter final judgment in this case, it should fully acknowledge that the Ninth Circuit in *Adams* reached a holding on a question of equal protection as well as of statutory interpretation— and that this holding squarely and unequivocally controls the equal-protection question in this case, until and unless the Supreme Court or *en banc* Ninth Circuit says otherwise.

Put simply, the Ninth Circuit in *Adams* reached two holdings: (1) that the INA's definition of "spouse" does not include a same-sex couple even if they are married under state law, *Adams v. Howerton*, 673 F.2d 1036, 1039-41 (9th Cir. 1982), and (2) that equal protection and rational-basis review allow Congress to define the word "spouse" in this way and to reserve the definition of marriage for opposite-sex couples.  *Id.* at 1041-43.  This Court's *Aranas* opinion makes note of

7

caselaw and facts that, at most, support an argument that *Adams*'s interpretation of the INA is no longer binding as a matter of statutory construction.  *Aranas* MTD Order at 11.  But even if that were correct, it would say nothing at all about the binding nature of the Ninth Circuit's equal-protection holding in *Adams*.  This Court's *Aranas* opinion provides no explanation for setting aside *that* holding and declaring that traditional marriage definitions in federal law do violate equal protection after all.[3]

And, as the decision in *Dragovich v. Department of the* Treasury, 872 F. Supp. 2d 944, 953 (N.D. Cal. 2012),[4] makes clear, the arguments for ignoring *Adams* on this score are extremely weak:  They rely either on (1) the Supreme Court's decision in *Lawrence v. Texas*, a due-process case in which the Court expressly disclaimed any intention to speak to same-sex marriage and in which the concurrence expressly stated that traditional marriage statutes satisfy equal protection, *see supra* at 6; on (2) statutory amendments that may change the meaning of the INA but cannot possibly affect overturn the Ninth Circuit's equal-protection holding, *see supra* at 7-8 & n.2; or on (3) a simple conviction that the "rationale" of *Adams* was wrongly decided.

This Court's *Aranas* opinion suggests that *Adams* was a product of an earlier time and is no longer appropriate for today.  *Aranas* MTD Order at 10.  If that is true, then these are precisely the circumstances for which the Supreme Court and the *en banc* Ninth Circuit have been given the ability to overturn circuit precedent.  And of course, the Supreme Court is expected shortly to decide whether to do exactly that, and the Ninth Circuit has before it two separate DOMA cases in

---

[3]  The Executive Branch defendants' argument that *Adams* "relied heavily on 8 U.S.C. § 1184(a)(4) [sic] . . . [which] was repealed in 1990," Exec.'s Resp. at 10 n.4, is inapposite for the same reason.  As this Court recognized in its *Aranas* opinion, the repeal or amendment of related statutory provisions may wipe the slate clean on previous cases' *interpretations* of the statute. *Aranas* MTD Op. at 10.  But there is absolutely no reason why repeal or amendment would also obliterate previous judicial holdings about whether the pre-amendment statute was constitutional.
[4]  The House's earlier briefing noted that the *Dragovich* court's first merits opinion did not cite to *Adams*, but did not discuss the second *Dragovich* opinion noted here.

8

which plaintiffs are making similar arguments.  This Court therefore need not decide whether it might be appropriate in other circumstances to conclude that *Adams*' equal-protection holding is no longer good law:  In these circumstances, such a holding plainly is unnecessary and inappropriate.

Simply put, Plaintiffs have challenged DOMA Section 3's and Section 101's constitutionality, and the issue for this Court is whether *Adams* is binding precedent on those constitutional questions.  It is.[5]  *See also United States v. Doe*, 324 F.3d 1057, 1061 (9th Cir. 2003) (only "panel sitting en banc may overturn existing Ninth Circuit precedent" (citing *Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 860 (9th Cir. 1996))); *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 877 (9th Cir. 2005) ("'As a general rule, a panel not sitting en banc may not overturn circuit precedent.'" (quoting *Palmer v. Sanderson*, 9 F.3d 1433, 1437 n.5 (9th Cir. 1993))).

## B.   Ninth Circuit Caselaw Forecloses Any Application of Heightened Scrutiny.

This Court recognized in *Aranas* that DOMA Section 3 is subject to rational basis review.  *Aranas* MTD Order at 11 ("The rule in the Ninth Circuit is that homosexuality is not a suspect or quasi-suspect classification requiring heightened scrutiny.").  Even the Executive Branch defendants – now effectively acting as *amicus curiae* with respect to Plaintiffs' equal protection claims – candidly acknowledge that *Witt v. Dep't of Air Force*, 527 F.3d 806 (9th Cir. 2008),  "is binding on this Court" and thus requires the application of rational basis review.  Exec.'s Resp. at 10.[6]

---

[5]  As was found in the recent decision of this Court in *Lui v. Holder*, No. 2:11-cv-01267 (C.D. Cal. Sept. 28, 2011) (ECF No. 38).

[6]  Because rational basis review clearly applies here, this Court has no opportunity to consider the Executive Branch defendants' (and the Plaintiffs') arguments that a heightened standard of scrutiny should apply.  But even if this Court were free to consider those arguments (as it is not), classifications based on sexual orientation would not qualify for heightened review under current Supreme Court precedent.  *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985) (admonishing that the judiciary must be "reluctant" to

*(Continued . . .)*

### III. DOMA and Section 101 Are Rationally Related to Numerous Legitimate Governmental Interests.

The Plaintiffs and Executive Branch defendants have no persuasive response to the House's arguments that many rational bases support DOMA Section 3 and Section 101.  And, as explained in the House's separate reply to Plaintiffs' Opposition, nothing in *Perry* or *Diaz v. Brewer*, 656 F.3d 1008 (9th Cir. 2011), changes this analysis.  *See* Reply in Supp. of Intervenor-Def.'s Cross Mot. for Summ. J. (April 22, 2013) (filed concurrently herewith) for further discussion.

### IV. DOMA Section 3 and Section 101 Do Not Discriminate on the Basis of Sex.

Plaintiffs also maintain that DOMA is subject to heightened scrutiny because it discriminates based on sex.  They cite no binding decision, and the House is aware of none, in which an Article III court interpreting the federal Constitution reached a similar conclusion.[7]  Therefore, there can be no serious question that DOMA Section 3 and Section 101 pass muster on this point.

### V. The Definition of Marriage Should Be Left to the Democratic Process.

The precedents governing this case are clear, numerous, binding, and uniformly in favor of DOMA Section 3's and Section 101's constitutionality. That, of course, does not mean that the Constitution endorses what some regard as an injustice.  It simply reinforces the fact that is the appellate courts that are entrusted with the responsibility of re-evaluating their own precedents – and,

---

establish new suspect classes.); *see, e.g., id.* (refusing to designate mentally handicapped a suspect class); *Lyng v. Castillo*, 477 U.S. 635, 638, 106 S. Ct. 2727, 91 L. Ed. 2d 527 (1986) (same for kinship), *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312-14, 96 S. Ct. 2562, 49 L. Ed. 2d 520 (1976) (age); *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 28-29, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973) (poverty); *see also Romer v. Evans,* 517 U.S. 620, 116 S. Ct. 1620, 134 L. Ed. 2d 855 (1996) (apply rational-basis review to law classifying based on sexuality); Br. on the Merits for Resp't the [House] at *49-*59, *United States v. Windsor*, No. 12-307, 2013 WL 267026 (U.S. 2013).  Contrary to Plaintiffs' implausible assertion, citing dispositive Circuit authority on an issue certainly does not "waive" that issue.

[7]  The House has already explained why cases relied upon by Plaintiffs in their opposition are neither binding nor apposite here.  *See* House Opp'n at 21-22.

ultimately, that the Constitution entrusts this matter to its carefully designed political processes and to the wisdom and virtue of the people and their legislators.

After all, this case and the other DOMA Section 3 challenges pose basic questions regarding a foundational social institution and the rights of the American people.  For many people on both sides of this debate, "these are not trivial concerns," but implicate instead "profound and deep convictions."  *Lawrence*, 539 U.S. at 571.  But these cases also pose fundamental choices regarding whether such difficult and challenging questions will be resolved through the democratic process – which is actively engaged on these issues – or instead through the courts.  With an issue as fast-moving and divisive as same-sex marriage, the advantages of the political process are substantial.

Currently, a robust political debate is underway at the federal and state levels, in which proponents of same-sex marriage have made remarkable strides.  That the political debate may not yield immediate and uniform results nationwide does not counsel against letting it continue, but instead reflects a result inherent in our federalist system.  One state may fully recognize same-sex marriages, another may permit civil unions, and others may apply the traditional definition.  The federal government, for its part, is free to adopt its own definition, but can also provide broader benefits to families (a term not defined in DOMA Section 3 or Section 101).  If one group were permanently frozen out of this political process, through official disenfranchisement or some other obstacle, judicial intervention would be imperative.  But that is not the case here.  As Chief Justice John Roberts recently remarked during oral argument in *United States v. Windsor*, "[a]s far as I can tell, political figures are falling over themselves to endorse [same sex marriage proponents'] side of the case."  Tr. of Oral Argument at 107-08, *United States v. Windsor*, No. 12-307 (S. Ct. Mar. 27, 2013), *available at* http://www.supremecourt.gov/oral_arguments/argument_transcripts/12-307.pdf.

1        This Court should recognize that DOMA Section 3 and Section 101 satisfy

2   rational basis review and allow the robust political debate over this issue to

3   continue.

4   **CONCLUSION**

5        The Court should grant the House's Cross Motion for Summary Judgment.

6

7                                Respectfully submitted,

8                                By:  */s/ H. Christopher Bartolomucci*

9                                H. Christopher Bartolomucci
    BANCROFT PLLC[8]

10

11                               *Counsel for Intervenor-Defendant the*

12                               *Bipartisan Legal Advisory Group of the U.S. House of Representatives*[9]

13

14  April 22, 2013

15

16

17

18

19

20

21

22

23

24  _____

[8]  Kerry W. Kircher, as ECF filer of this document, attests that concurrence in the filing of the
25  document has been obtained from signatory H. Christopher Bartolomucci.

26  [9]  The Bipartisan Legal Advisory Group, which speaks for the House in litigation matters,
    currently is comprised of the Honorable John A. Boehner, Speaker of the House, the Honorable
27  Eric Cantor, Majority Leader, the Honorable Kevin McCarthy, Majority Whip, the Honorable
    Nancy Pelosi, Democratic Leader, and the Honorable Steny H. Hoyer, Democratic Whip.  The
28  Democratic Leader and Democratic Whip decline to support the filing of this reply.

# CERTIFICATE OF SERVICE

I certify that on April 22, 2013, I electronically filed the foregoing

Intervenor-Defendant's Reply to Federal Defendants' Response to Cross Motion

for Summary Judgment with the Clerk of Court by using the CM/ECF system,

which provided an electronic notice and electronic link of the same to the

following attorneys of record through the Court's CM/ECF system:

Caren E. Short, Esquire
Christine P. Sun, Esquire
Joseph J. Levin, Jr., Esquire
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, Alabama  36104
caren.short@splcenter.org
christine.sun@splcenter.org
joe.levin@splcenter.org
*Counsel for Plaintiffs*

Adam P. Romero, Esquire
Rubina Ali, Esquire
WILMER CUTLER PICKERING HALE & DORR LLP
7 World Trade Center
New York City, New York  10007
adam.romero@wilmerhale.com
rubina.ali@wilmerhale.com
*Counsel for Plaintiffs*

Eugene Marder, Esquire
WILMER CUTLER PICKERING HALE & DORR LLP
950 Page Mill Road
Palo Alto, California  94304
eugene.marder@wilmerhale.com
*Counsel for Plaintiffs*

Randall R. Lee, Esquire
Matthew D. Benedetto, Esquire
WILMER CUTLER PICKERING HALE & DORR LLP
350 South Grand Avenue Suite 2100
Los Angeles, California  90071
randall.lee@wilmerhale.com
matthew.benedetto@wilmerhale.com
*Counsel for Plaintiffs*

Jean Lin, Senior Trial Counsel
U.S. DEPARTMENT OF JUSTICE
Civil Division - Federal Programs Branch
20 Massachusetts Avenue, Northwest
Washington, District of Columbia  20530
jean.lin@usdoj.gov
*Counsel for Executive Branch Defendants*


*/s/ Kerry W. Kircher*
Kerry W. Kircher